## GOLDSBY vs. GOLDSBY'S ADM'R.

[BILL IN EQUITY FOR JUDICIAL CONSTRUCTION OF WILL AND SETTLE-MENT OF DECEDENT'S ESTATE.]

1. *Bequest to children and "heirs of their body," with executory devise over.* Where a testator devises and bequeaths property, real and personal, to each of his children; declaring, in a subsequent clause, "all of the above property is given and bequeathed to my children and the heirs of their body, and for their proper benefit and use, and not to be disposed of by the husbands of my said daughters, and to revert to my family in all cases where my children may die without issue"; and adding, "this item is merely intended to entail the property given to my sons, as far as can be done consistently with the laws of the country,"—an absolute estate is thereby vested in a son who survives the testator, and then dies leaving children, and such children take nothing under the will.

APPEAL from the Chancery Court of Perry.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by Carlos Reese, as the administrator of the estate of George W. Goldsby, deceased, against the widow and children of said decedent, for the purpose, principally, of obtaining a judicial construction of the will of Thornton B. Goldsby, deceased, who was the father of said George W. Goldsby. Thornton B. Goldsby died in September, 1858, leaving a large estate, consisting of lands and slaves. By his last will and testament, which was duly admitted to probate after his death,

said Goldsby devised fifteen hundred acres of land to each of his children, and directed his negroes to be divided among them, after deducting those bequeathed to his widow; and the sixth-item of his will was in the following words: "All of the above property is given and bequeathed to my children and the heirs of their body, and for their proper benefit and use, and not to be disposed of by the husbands of my said daughters Eliza and Elizabeth, and to revert to my family in all cases where my children may die without issue. This item is merely intended to entail the property given to my sons, as far as can be done consistently with the laws of the country." George W. Goldsby received under the will of his father a plantation, containing fifteen hundred acres, and about thirty negroes; and he afterwards died, in February, 1861, intestate, leaving a widow and five minor children. The bill alleged, that doubts had arisen, since his death, as to the estate which he took under his father's will; that his estate was largely indebted, and would be insolvent if he took only an estate for life under the will; and that, if he took an absolute estate, it would be necessary to sell some of the property for the payment of debts. The prayer of the bill was for a judicial construction of the will, the administration of the intestate's estate, and general relief. The widow answered, admitting all the allegations of the bill; and a formal answer was filed by the guardian *ad litem* of the infants. On the pleadings and proof, the chancellor rendered the following decree:

CLARK, Ch.—"The only question of difficulty in the case arises upon the construction of the will of the late Thornton B. Goldsby, the sixth clause or item of which was intended to create an executory devise in favor of the surviving members of his family, in the event of the death of any one of his children without issue, as to the property bequeathed to such child. Such a provision in a will, before the Code took effect, would have been void, as tending to a perpetuity. But, by section 1302 of the Code,

as I understand it, that would not now be the case, but an estate in favor of the executory devisee would spring into force, as soon as the first taker died without issue, without regard to the law as previously settled. The title of the first taker is in no way dependent on that of the executory devisee. His title is an estate of inheritance, which he can convey or devise to whomsoever he pleases; but subject at all times to be defeated, in the hands of his vendee or devisee, upon the happening of the event on which the limitation over is made to depend; which limitation the first taker has no power to defeat.—See *Chester v. Grier*, 5 Humph. 26–33; *McRee's Adm'rs v. Means*, 34 Ala. 349–377. This being the case, where is the fee? Certainly in the first taker, and not in his heirs, as they must claim through him, and can have no connection with the executory devisee, whose interest is dormant until the contingency arises.

" Section 1299 of the Code provides, that every estate in lands is to be taken as a fee-simple, although words necessary to create an estate of inheritance may not be used, unless it clearly appears that a less estate was intended. That Thornton B. Goldsby intended by his will to create a qualified estate, is apparent; but still it was a fee-simple, determinable upon the event of the first devisee dying without issue. But it is insisted, that he only intended to create a life-estate in his sons and daughters; and that this intention is manifested, as to his sons, by the concluding sentence of the sixth clause, in which he states, that 'this item is merely intended to entail the property given to my sons, so far as can be done consistently with the laws of the land'? This was the extent of his intention. It was to entail, if the law would permit. But, as section 1300 of the Code shows that the law would not permit any entailment whatever, the testator consequently had no controlling intention to entail the property, but only a desire to do so if the law would permit him.

" It is further contended, however, that he intended to create a remainder in favor of the children of his children,

in all the property, both real and personal, that might be divided off to them, by the words 'heirs of their body;' and that, under sections 1302 and 1304 of the Code, such issue of the children must take as purchasers, on the death of their respective ancestors, the first takers.  Section 1302 of the Code was intended to remove that perplexing question, as to the limitation being good or too remote, and can have no application to the children, as such, of the first takers; and section 1304 applies to a case where the first taker takes only a life-estate.  But this is not such a case. Here, George Goldsby had, at least, a qualified fee, which was an estate of inheritance, and not a mere estate for life; and the annexation of the words 'heirs of their body' could, at most, only create a conditional fee at common law, or an estate in fee-tail under the statute *de donis*, if in force; which estate, section 1300 declares, becomes on its creation an estate in fee-simple, and vests in the first taker the same power as in cases of pure and absolute fees; and, while it may be truly said, that such is the effect of this section, so far as the heirs of the body can be considered; still it must not be forgotten, that these several sections of the Code are to be construed *in pari materia*.  Consequently, while George Goldsby took a fee, and an inheritable estate, it was qualified, as to the executory devise over, in the event of his dying without issue; but, as to his heirs, or the heirs of his body, in the language of the Code, it was 'pure and absolute;' and, as he did not die without issue, his death consummated his title, discharged of the contingent estate, and gave to his heirs a fee-simple absolute, not by virtue of a remainder created by the will of his father, but as of his own demesne as of fee.

"It is said, however, that this case is within the influence of the decision in *Mason v. Pate's Executor*, (34 Ala. 379,) and that there is here, as there, a life-estate by implication.  But the cases are clearly distinguishable.  There, the testator willed the property, which his daughter should receive under his will, 'at her death to descend to her bodily heirs'; which was held, under the Code, to vest

only a life-estate in the daughter. But why? because the property was to go 'at her death' to the bodily heirs; showing clearly, by necessary implication, that the testator intended her to have only an estate for life. Here, there are no equivalent words to limit the estate of the first taker. In that case, it is said by the judge who delivered the opinion of the court, that, 'in the application of section 1304 to cases which might arise, it may become material to inquire, whether its provisions embrace conveyances *to A. and his heirs, to A. and his issue*, or *to A. and the heirs of his body;*' and as the section applies to personal as well as real property, and such words are not necessary to give the absolute ownership of personal property, the section can have no application; and he proceeds to show that the construction insisted on would require the substitution of 'children' for 'heirs of the body,' so that the conveyance or devise would then read 'to A. and his children;' which would not be a life-estate in A., with remainder to his children, but a joint estate with them, or an absolute estate, according to the fact whether or not he had children living at the date of the conveyance. The judge then says, 'The case we have supposed is not that of an estate *in remainder, limited to the heirs, issue, &c., of a person to whom a life-estate in the same property is given.* There is neither a life-estate given, nor a remainder limited; but, on the contrary, if the heirs, issue, &c., take at all under such conveyance, they take jointly with the ancestor.' The case supposed by the court is this case. There is neither life-estate given, nor remainder limited; and the authority, instead of being for the children of the first taker, is clearly against them.

"But here the counsel for the children take the ground, if the opinion of the court is adverse to them on the other view taken, that the context shows sufficient to authorize the court to declare the estate a joint one to George Goldsby and his children. It is true the testator speaks of the children of his children; not in connection with the devises to them, but as to distinct bequests to be raised for

them out of other property. The only words which could, under any circumstances, be construed to extend to the children of his children, are those in connection with 'the heirs of their body,' and ' for their proper benefit and use.' But these words evidently refer to his own children, while there is nothing to show that he intended their issue. Had he intended to create a joint estate between his sons and their children, he would not have declared his intention to entail the property if the law would permit.

" Having arrived at the conclusion that, as to the real estate partitioned to him, George Goldsby took a qualified fee, and that, on his death, it descended to his heirs as heirs, discharged from the limitation over; and that he took, in like manner, an absolute title in the personal estate, which goes to his personal representative; it results that both must be held subject to his debts, and the real estate to the dower of his widow; and as the litigation is of such a character that it is proper a court of chancery should take jurisdiction, and direct the administrator in the discharge of his duties, it will be so decreed."

The chancellor therefore rendered a decree, requiring the creditors of the estate to prove their debts before the master, giving the widow leave to file a cross-bill for the ascertainment of her dower, &c.; and his decree is now assigned as error by the children.

BYRD & MORGAN, for appellant.
BROOKS & GARROTT, *contra.*

STONE, J.—On the questions argued in this court, we fully concur with the chancellor, and adopt his opinion and conclusions; holding, with him, that the estate in controversy must be administered as belonging to the estate of George W. Goldsby, free from all restraints or limitations imposed by the will of his father, Thornton B. Goldsby.

As circumstances may render it necessary, that some modification be made of the chancellor's directions for the further prosecution of this suit, we forbear to express any

opinion on that part of the case, lest we might be understood as merging his decree in ours, and thus placing it out of his power to accommodate his action to the unfolding wants of the litigation.

The decree of the chancellor, to the extent above expressed, is affirmed.