EDWARDS AND WIFE, Ex'rs, *vs.* BIBB et al.

[REAL ACTION IN THE NATURE OF EJECTMENT.]

1. *Wills ; how construed.*—Very great latitude is allowed in the construction of the language of wills, in order to carry out the intention of the testator.

2. *Same ; how different from deeds.*—Wills are different from deeds in this respect : In a will, the intent governs the words, but in a deed the words govern the intent. Wills are the least technical of all instruments for the conveyance of estates.

3. *Issue; meaning of.*—The word "issue" is one of a two-fold meaning. It may mean, all the descendants of the devisor, to an indefinite extent, or it may mean children living at his death, or at the death of the first taker, after the expiration of a life estate. And the latter is the meaning which will be given to it, when it is necessary so to construe it in order to carry out the manifest intention of the devisor.

4. *Intention of testator ; what will not be presumed to be.*—A testator is not to be presumed to intend, by his will, to violate the law, nor to be ignorant of it, and it is the duty of the court so to construe the language of the will that it shall have effect, and not to be frustrated, so far as a legal intent can be deduced from its language.

5. *Same ; how far must govern.*—In a will, the intention of the testator is not to fail because it cannot take effect to the full extent, but it must work as far as it can.

6. *Executory devise; what creates.*—Under the law of this State, the devise of an "estate," consisting of both real and personal property, by the same words of a will, to one for life, and, after the termination of the life estate, to T. and his lawful male issue, and in case T. should die, leaving no male issue, or having such male issue, the same shall become extinct, before he or they shall arrive at the age of twenty-one years, likewise leaving no male issue, then, in that case, to David, and his lawful male issue, creates an executory devise of the "estate" thus given to D. And if D. dies intestate in this State, the property thus devised descends to his heirs and distributees, under the laws of the State, existing at his death.

7. *Wills ; construction of ; duty of court.*—In construing a will, it is the duty of the court to find out the intention of the testator, and construe the language in conformity with the intention, if it is not forbidden by law.

8. *Same.*—If there is a legal purpose, and the intention of the testator, as manifested in the will, is directed to effect this purpose, the court must carry out this purpose.

APPEAL from the Circuit Court of Limestone. Tried before the Hon. W. B. Wood.

Thomas Bibb, of the parish of La Fourche Interior, in the State of Louisiana, made his last will and testament, in which he disposed of a very large estate, both real and personal; a part of which lay in the county of Limestone, Alabama. This will bears date the 14th day of February, 1839.

It is admitted in the proofs that the testator died in the year 1840, and that after his death his will was duly proven and admitted to record, as required by law, so as to give it full effect in the State. It was further admitted that said testator left him surviving his widow, Parmelia Bibb, and his sons, Thomas Bibb, jr., and David Porter Bibb; that these three persons are mentioned as legatees in said will, as hereinafter shown. It was also admitted that Thomas Bibb, jr., was, at the death of his father (said testor) about 33 years old, and unmarried; and that David Porter Bibb was then married, and had a child born to him, who was a son and above the age of two years, and said son is still living. Thomas Bibb, jr., was also married in 1857, and died on the 11th day of November, 1861, leaving at his death an infant female child, who is his only lawful issue, and at his death, David Porter Bibb took possession of the land in controversy. David Porter Bibb died on the 9th day of June, 1865, leaving a widow, Mary P. Bibb, and several children, who are his heirs-at-law. Said Parmelia Bibb was dead at the institution of this suit.

After the death of Thomas Bibb, jr., his widow, Anna C. Bibb, intermarried with Julian Edwards. Mrs. Edwards was appointed by her first husband (said Thomas Bibb, jr.,) executrix of his will and qualified as such. After her marriage with Edwards, he, in right of his wife, and in her name, as executrix of the will of Thomas Bibb, jr., deceased, instituted suit in the circuit court of Limestone county, by an action of statutory ejectment, for the possession of a part of the lands, comprehended in the "Belmina estate," (the other portions of the land having been already dis-. posed of by consent of all the legatees and heirs), against

Porter and Lockhart Bibb, the sons of David Porter Bibb, deceased.

Item 2 of the will is as follows : "I give and bequeath unto my wife, Parmelia Bibb, during her natural life, my "Belmina estate," in the county of Limestone, State of Alabama, [here follows boundaries and descriptions of]; and I further bequeath to my wife, during her natural life, all the negroes, horses, stock, furniture, appurtenances, belonging to said plantation, [here follows the names of some negroes excepted out of the bequest]."

The case was tried at the fall term, 1868, when, after a long charge (which it is not necessary to set out) as to the law of the case, upon the agree dfacts, the court charged the jury "that if they believed the evidence, they must find for the defendants;" and plaintiff duly excepted. The plaintiff then asked the court to charge the jury, that if they believed the evidence they must find for the plaintiff, which charge the court refused to give, and the plaintiff excepted.

The charge given, and the refusal to charge as requested, are now assigned as error. The item of the will upon which the case turns, and the other facts of the case, will be found in the opinion.

A. J. WALKER, and WALKER & BRICKELL, for appellants.
ROBINSON & WALKER, and HOUSTON & PRYOR, *contra*.

NOTE BY REPORTER.—The briefs filed in this case did not come into the reporter's hands. The case was very elaborately and ably argued at the bar.

PETERS, J.—Wills take effect from the death of the testator, and their validity and their construction are to be controlled by the laws of the country where they are to be enforced.—17 Ala. 286.

The testator, in this case, died in 1840, and the laws which then effected the provisions of this will, disposing of his property in this State, were the 5th and 10th sections of the act of the 22d December, 1812.—Aikin's Dig., pp. 94, 95, 5, 35, 39; Clay's Dig., pp. 156, 157, 5, 33, 37. The ef-

Edwards and Wife, Ex'rs, v. Bibb et al.

fect of this statute was to render words of inheritance unnecessary in a deed or will of lands, and to abolish all " estates in fee tail," and convert them into estates in fee simple. It leaves all other estates as they stood before at common law, modified by the English statutes applicable to them. If, then, the language of this will creates an estate in David Porter Bibb, which, by aid of the statute above referred to, would be good at common law, modified as above said, then his title must be sustained. If it does not, it must fail.

In the construction of wills, very great indulgence is allowed in order to sustain and carry out the intention of the testator, if that intention does not violate the policy of the law.

" The clauses and sentences of · a will shall be severally transposed to serve the meaning of it ; and construction *shall* be made of the words to *satisfy* the intent, and they shall be put in such order as that the intent may be fulfilled."—10 Bac. Abr., Bouv. 535.  " And if the words admit of a two-fold construction, the rule is to adopt that which may tend to make good the instrument, and to effectuate, rather than to frustrate ; and if words are rejected, or supplied, by construction, it must always be in support of the intent."—10 Bac. Abr., Bouv. 529.  "And the intention of the testator is not to fail, because it cannot take effect to the full extent, but it must work as far as it can."— 10 Bac. Abr., Bouv. 540.

These are rules of construction applied to wills, which are sustained by the most respectable authorities at common law ; and they have not been abrogated by any statutes, or judicial decisions of· this State.—1 Kent, 510, 511.

Under their influence, we feel justified in refusing to give any technical import to the word " perpetuate," as used in explaining the testator's reasons for devising the " Belmina estate," as shown in his will, so as to control the true meaning of the words used, in creating the devise of that *estate* to his sons.

The portion of the will on which this case turns, is the 6th item.  That item is in these words, namely : " Having, in item 2 of this, my last will and testament, given and be-

queathed unto my wife, Parmelia Bibb, during her natural life, that portion of my ' Belmina estate' not in this will expressly reserved, now at the death of my said wife, I do hereby give and bequeath that same estate, together with all things described in item 2, as devised to my said wife, unto my oldest son, Thomas Bibb and his lawful male issue, and in case my said son, Thomas Bibb, should die, leaving no lawful male issue, or having such male issue, the same shall become extinct before he or they shall arrive at the age of twenty-one years, likewise leaving no male issue, then, and in that case, my will and desire is that that *estate*, with the property named and devised to my said wife, shall become the property of my son, David Porter Bibb, to descend to the lawful male issue of him, my said son Porter. And lest my other children may conceive that I have herein made a distinction, in thus excepting and devising this portion of my estate, I will remark to them that I am prompted from no other consideration than to perpetuate this part of my estate in my family. I commenced operations on this estate in a state of nature. I toiled and labored to bring the same into its present improved condition. It is endeared to me by many fond recollections, and it is the wish of your dying father, who has spent his life in providing the means for your future comfort and enjoyment, that you will never permit an envious thought to cross your minds, or that your fond father wished to place one of you in a better condition than the others."

As a *fact*, there can scarcely be a doubt that it was the wish of the testator to keep this portion of his large estate in the possession of his sons, Thomas and David Porter Bibb, after the termination of his wife's estate in the same, as long as the law would permit him to do so. The will was made with a purpose to clothe them with the legal right to hold it with this view. To have intended otherwise would have been a folly, and a nugatory act. It would be equivalent to saying, "I give my sons this property for a certain legal purpose ; that is, to keep it in the family as long as the law will allow, in which I feel a most solemn interest, yet, at the same time, I so contrive as purposely

to defeat my gift, at least so far as my son Porter is concerned." The construction which would bring about such a result as this, would very much resemble what reason would denounce as an absurdity.

Then let us enquire what length of time the law permitted the testator to keep the estate devised in the 6th item of his will above quoted, in his family. Undoubtedly, this could have been done for a period of a life, or lives, in being, at the death of the testator, and for twenty-one years, and a fraction of a year afterwards.—4 Kent, 268, marg. In this case, both the sons, Thomas Bibb and David Porter Bibb, were living at the death of the testator ; and the devise, by effect of our statute, is to the eldest son, Thomas Bibb, in feé simple, and in case he should die *leaving* no lawful male issue, then and in that case, the *estate* given to Thomas, "shall become the property" of David Porter Bibb. Thomas Bibb, jr., died without leaving male issue. And the question is, was the estate given to ·Porter Bibb, such an one as the law permitted to stand. Thomas Bibb, jr., could not die *leaving* male issue, unless such male issue were living at his death. They could not be left, unless they were living when he died. The word " leaving," then, imports that this was the testator's meaning. Besides this, the " Belmina estate" was the gift. It comprehended lands, slaves, stock, furniture and all the appurtenances belonging to " said plantation," to a very large amount. Certainly, the testator intended that the *whole* estate should pass by the devise—the realty and the personalty together! As a *fact*, this must have been his wish. All the personal property included in the gift did pass to David Porter Bibb, upon the death of his brother Thomas, leaving no lawful male issue surviving him. About this there can be no question.—*Flinn v. Davis*, 18 Ala. 69. Why, then, did not the land pass with the rest ? This certainly must have been the testator's desire ;. for he intended to devise the " Belmina estate ;" and the land was a part of it.

But it is said, that the legal intent of the testator must be ascertained from the proper legal construction of the language he has used to indicate his intent. And in this case the language used imports an illegal intent. That by

the use of the words, "male issue," or the word "issue," without any words limiting this expression to the issue living at the death of said Thomas Bibb, a perpetuity is intended, which is illegal; because such issue might not fail for many generations after the death of Thomas Bibb, the first taker of the estate under the devise; and this would be too remote a postponement of the estate intended to be given to Porter Bibb. The law requires that the estate intended to be given to Porter Bibb must vest in twenty-one years and the fraction of a year, sufficient to cover the birth of a posthumous child, after the death of Thomas Bibb, or the behest is invalid.—4 Kent, 267, 271, marg.

The word *issue* may have this general meaning, or it may have a more limited one. It may mean children of the first taker, or it may mean issue living at his death.— 6 Bac. Abr., Bouv. 147; 7 Ves. 522; 3 Ves. & B. 67. If the testator used it in either of these imports, it is the duty of the court so to construe it. The construction of words in a will is much less technical than the use of the same words in a deed. In the will, their technical import may be altogether disregarded, if they were not used by the testator in a technical sense. Wills are the least technical of all legal instruments for the conveyance of estates. Each will must stand or fall upon its own facts. They are to be "expounded rather on their own peculiar circumstances, than by any general rules of positive law."— 1 Spence Eq. 470, marg.; 2 Blac. Com. 382. They very much differ from deeds. In a deed the words govern the intention; in a will the intention governs the words.—10 Bac. Abr., Bouv. 535; 2 *ib.* 576.

In this will there is but one set of words used to convey the "Belmina estate," which consisted of both real and personal property to a very large amount. If the testator intended to convey a part of this "estate," he must also have intended to convey the whole. That he did intend to convey a part, is beyond any question whatever. The language used passes the whole of the personal property without any construction or explanation.—4 Kent, 281; 18 Ala. 69. Then the court is bound to construe the language used

so as to pass the real estate also, if the law will permit such a construction. That it will permit it, there seems to be very little reason to doubt.

There are two contingencies, on the happening of either one of which, the estate given to Thomas Bibb was cut off and vested in his brother, David Porter Bibb. The one was, that Thomas Bibb " should die leaving such male issue, the same shall become extinct before he or they shall arrive at the age of twenty-one years, likewise leaving no male issue." The words *leaving* and *having* must refer to some thing in existence at the time the leaving and having occurs. This can only be at the death of Thomas Bibb. Thomas Bibb could not die and *leave* a thing that did not exist ; he could not die and *have* a thing that did not exist. Then these words, and the purpose of the testator, as manifested in using the same words to convey both real and personal estate by the same gift, show, beyond all reasonable controversy, that the testator intended to use the word issue to mean issue living at the death of said Thomas Bibb, jr. This construction is allowed by the highest authorities and is justified by the facts and circumstances of this case. We therefore hold, that upon the death of Thomas Bibb, jr., leaving no lawful male issue surviving him, the "Belmina estate" passed to David Porter Bibb, and became his " property," to descend to those persons entitled to the same, as required by the laws of this State, at the death of said David Porter Bibb.

There is but one gift here ; that is, the gift of the "Belmina estate." It can not reasonably be questioned, that the testator wished this whole gift to pass as he has directed in his will : First, to his son Thomas Bibb, and then, upon the happening of one of two certain events, to his son David Porter Bibb. This must be so, because it is so written down in the will. This may be done without the creation of a perpetuity. And if the testator did not intend to create a perpetuity, the court ought not to impute this purpose to him. The court must presume, that he knew the law, and that he did not act with a view to violate it. In *Flinn v. Davis*, Chief-Justice Dargan says : " I hold

43

it to be a sound rule of construction, that if the language be capable of two distinct meanings, one of which would sustain and the other defeat a plain and manifest design of the testator, we should so construe it as to support the manifest intention, and should not imply an intention repugnant to the expressed will of the testator, unless it will bear no other reasonable construction."—18 Ala. 157, 158 ; 3 Cru. Dig. Greenlf's Ed. 454, *note* 1. Under the guidance of this liberal and just rule of construction, coupled with the fact, that the same words are used to convey the real and personal property constituting the " Belmina estate," and the qualification and limitation of the word issue, by the words *leaving* and *having*, as before explained, we entertain the opinion, that the testator intended to confine the word " *leaving* no lawful male issue," to the male issue of Thomas Bibb living at his death. This contingency would not be too remote.—6 Bac. Abr., Bouv. 93 ; *Porter v. Bradley*, 3 Tenn. R. 143 ; *Roe v. Jeffery*, 7 Tenn. R. 589 ; *Jones v. Spaight*, 1 Car. Law R. 544.

There is no error in the judgment of the court below, and the same is affirmed.

NOTE BY REPORTER.—At a subsequent day of the term appellants applied for a rehearing, to which the following response was made :

PETERS, J.—This is an application for rehearing, submitted at the last term. I have carefully considered the judgment then pronounced in the case, but I have been unable to discover any just reason for disturbing it.

It would be vain to contend that the will under discussion did not intend to dispose of the " Belmina estate" as an entirety, or that that property did not consist of land and personal chattels. This, the language of the will and the testamentary description of the thing mentioned in the gift, clearly manifest, and it is a fact admitted in the proofs ; for the evidence upon which the decision in the court below turned, is all admitted facts. To deny this would be absurd. And an absurd conclusion or construction is not to be permitted.—1 Story Const. pp. 443, 444.

Edwards and Wife, Ex'rs, v. Bibb et al.

It would be equally unreasonable to say, that it was not the wish of the testator, under the circumstances named in the will, that the "Belmina estate" should pass to his younger son, David Porter Bibb. The only answer, then, that can defeat this purpose is, that this intention, as declared in the will, is il'egal, and that the law does not permit it to be carried into effect.

Wills are to be construed according to the purpose of the person by whom they have been made; if this purpose is not such an one as is clearly forbidden by law, it must be executed. And as the instrument speaks the mind of one person only, its language is not to be construed in a technical sense, but only in such sense as it was used by the testator. Wills differ from contracts in this respect; because there are, in every contract, two or more persons concerned, and the language must be construed so as to suit the intention of both these parties. If the words are technical, they are to be explained and enforced in their technical acceptation; because, in this sense, it is to be presumed that both parties must have used them. But in a will, there is but one party speaking, and he may use just such language as he pleases and affix his own meaning to it; and this meaning must govern its construction.

The instrument which declares a testator's disposition of his property is his will—that is, his intention with regard to the disposition of his property after his death. And the rules of construction applied to such instruments are solely for the purpose of finding out this intention of the testator. Therefore, it is said not to be allowed to defeat this intention by affixing to the testator's words a meaning which he did not apply to them when he used them. The intention of the testator is the pole star that governs the construction of the will, and it is the purpose of the law to do justice to this intention. In furtherance of this view of the construction of the words of a will, it is said, also, that when a general principle for the construction of an instrument has been once laid down, the court will not be restrained from making their own application of this principle, because there are cases in which it may have been applied in a different manner.—*Browning v. Wright*, 2 B. &

P. 24 ; *Wolpole v. Cholmondely*, 7 T. R. 148. The rule, then, is not, as in contracts and statutes, to seek the meaning of the words used, but the meaning in which they were used by the testator. This discloses his intention, his will ; and it is this intention that must govern the court, unless it is unlawful. In a will we may put any construction on the words that they will bear, in furtherance of the testator's manifest purpose, *ut res majis valeat, quam pereat.* To this end Lord Coke says, that it is a general rule, that whensoever the words of a deed, or of the parties without a deed, may have a double intention, and one standeth with law and right, and the other is wrongful and against law, the intendment that standeth with law shall be taken.—Coke's Litt. 42, 183 ; 10 Rept. 676 ; *Archbold v. Thomas*, 3 Con. 285 ; *Riley v. Vanhouton*, 4 How. (Miss.) 428 ; *Shore v. Wilson*, 9 Clark & F. 397 ; 2 Pars. on Contr. 497, *et seq.*

To a like effect are other distinguished authorities. " I do," says Lord Chief-Justice Hobart, " exceedingly commend the judges that are cunning and almost subtle—astute, which is the word used in the proverbs of Solomon, in a good sense, when it is to a good end; to invent reasons and means to make acts according to the just intent of the parties, and to avoid wrong and injury, which, by rigid rule, might be wrought out of the act." This judgment is approved by so eminent and careful a lawyer, as Lord Chief-Justice Hale, and also by Chief-Justice Willes.— *Clanricard's Case*, Hob. 277 ; *Crossing v. Sudamore*, 1 Vent. 141 ; *Doe v. Salkeld*, Willes, 676 ; 2 Par. on Con. 505, 506 ; *Jenks Cent, Case*, 81 Coke, Litt. 322 ; Dig. 34, 5, 23.

Here the thing given was a plantation, slaves, furniture, farming stock and tools. These are all comprehended under the description of the " Belmina estate." They constitute it, and are spoken of as a whole. At the time the will was made, the personal property, which formed a part of the " Belmina estate," was, possibly, more valuable than the realty, which formed the portion of that estate which consisted of land. These are not separated in the gift. If one passes, all pass under the same title and description ; because there was but one gift and but one description of the property given, and but one intention manifested in

the will as to the whole estate. There is no question as to the power to pass the personal chattels to David Porter Bibb. And it was evidently the wish of the testator to pass the personalty to David Porter Bibb, in the event that the older son, Thomas Bibb, had no male child surviving him, who could inherit his estate. This intention must have adhered to the whole gift; it was but one thing, and the intention included the whole of it. Then, most clearly, the intention must have been to pass the land as well as the chattels—that is, the whole gift, which was the "Belmina estate," as an entirety. All was intended to be given to the younger son, Porter, in the event that the older son, Thomas, had no male issue capable of inheriting his estate. Thomas died without any such male issue or child. Then, it is beyond question, the property might pass to David. This could have been accomplished by proper words. It was not forbidden by law. I, therefore, think that the language used in connection with the facts of this case, sufficiently indicates this intention of the testator. This intention must govern the court. The rehearing is, therefore, denied.