# Edwards and Wife *v.* Bibb *et al.*

### *Bill in Equity for Dower.*

"*Executory devise,*" *what valid.*—The testator, whose will was duly admitted to probate here in the year 1840, devised certain lands in this State to his widow for life, and at her death "to his eldest son T., and his lawful male issue, and in event T. should die leaving no lawful male issue, or leaving the same, such male issue should become extinct before he or they arrive at the age of twenty-one years, likewise leaving no male issue, then and in that case, my will and desire is, that such estate, with the property named and devised my said wife, shall become the property of my son D., to descend to the lawful male issue of him, my said son D."

The widow took possession and then died. T. thereupon entered and took possession, leaving a widow and infant daughter, but never having had male issue. D. then took possession and died intestate, leaving a widow and heirs, who partitioned the land among themselves. T.'s widow filed her bill to have dower allotted her in the lands.

*Held*—1. The testator intended to confine the words "leaving no male issue" to the male issue of Thomas Bibb, living at his death, and this contingency was not too remote. (Reaffirming on this point *Edwards and Wife v. Bibb et al*, 43 Ala. 666.)

2. The contingency not being too remote, the remainder over was a valid "executory devise," within the meaning of the proviso to the 10th section of the act of 1812 (an act to amend an act respecting conveyances, Toulm. 15,

Laws of Alabama, 247; Clay's Dig. 157, § 37), which governed this case, and upon T.'s death the title in him became extinct, passing to D. in fee.

3. T.'s widow was not entitled to dower.

4. *Dower; when wife not entitled to.*—Dower is a derivative estate, the creature of law, not of contract, carved out of or abstracted from the inheritance, which the husband, by his own act alone, cannot bar or impair; where, however, by the very terms of the conveyance, or devise, legal in form and purpose, the estate expires with him, cutting off *per formam doni*, the heritable quality of the estate, and the title passes to another as purchaser by a valid limitation over, the primitive estate is gone, and there is nothing left from which dower can be derived.

5. *Same*—What would be the result if the case were one of mere reversion to the demisor or grantor, is not decided.


APPEAL from Limestone Chancery Court.

Heard before Hon. R. S. WATKINS.

This was a bill in equity, filed by Ann C. Edwards and her husband, against Mary P. Bibb individually, and as administratrix of the estate of David Porter Bibb, deceased, and certain of his heirs at law, seeking to have dower allotted to her in certain lands in their possession.

The complainant, Ann C., in the year 1857, intermarried with one Thomas Bibb, jr., and continued to live with him as his wife until his death, and afterwards intermarried with her present husband and co-complainant, Julian T. Edwards. Her claim of dower in said lands arose in this wise : Prior to the year 1840, Thomas Bibb, sr., (the father of Thomas Bibb, jr., complainant's first husband,) was seized of a valuable tract of land in Limestone county, the lands in question, known as the "Belmina estate."

Thomas Bibb, sr., died on the 23d day of April, 1840, leaving a last will and testament, which was duly admitted to probate in that county. The will, among other provisions not necessary to be here noticed, devised said Belmina estate, with the exception of a small portion, (which he had conveyed to one Jackson,) to testator's wife, Parmelia Bibb, during her natural life, and at her death "unto my eldest son, Thomas Bibb, and his lawful male issue, and in case my said son Thomas should die, leaving no lawful male issue, or leaving such male issue, the same should become extinct, before he or they shall arrive at the age of twenty-one years, and likewise leaving no male issue, then, and in that case, my will and desire is, that said estate, with the property named and devised to my said wife, shall become the property of my son, David Porter Bibb, to descend to the lawful male issue of him my said son Porter."

This clause of the will was once before construed in this court, in an ejectment suit brought to recover the lands, in which dower is sought, from the heirs of David Porter Bibb. See *Edwards and Wife v. Bibb et al.,* 43 Ala. 666.

[Edwards and Wife v. Bibb et al.]

About the year 1855, said Parmelia departed this life, after taking possession of the lands devised to her for life, and thereupon said Thomas Bibb, jr., entered and took possession, and so remained until his death in 1861, leaving a daughter, the fruit of his marriage with complainant, but never having had any male issue. He left a will from which his widow duly dissented, and which in the view the court took of this case need not be further noticed. In 1865 the said David Porter Bibb entered into possession and so remained until his death in the latter part of that year, intestate. The appellees, Mary P. Bibb, his widow and administratrix, and his heirs at law, were in possession of said lands at the time of the filing of said bill, and had made partition among themselves.

The chancellor dismissed the bill on demurrer, and hence this appeal.

L. P. WALKER, and JOHN D. BRANDON, for appellants.

PRYOR, and ROBINSON, contra.

STONE, J.—In the case of *Edwards & Wife v. Bibb et al.*, 43 Ala. 666, the question considered and decided was, whether under the will of Thomas Bibb, sr., Thomas Bibb, jr., took an absolute title in fee to the property therein described as a portion of the Belmina estate, or did it pass to David Porter Bibb on the death of Thomas Bibb, jr., "leaving no lawful male issue." Thomas Bibb, jr., had died "leaving no lawful male issue." It was then ruled that the words of the will constituted a valid "executory devise" of the estate over to David Porter Bibb. An application for a rehearing in that cause was overruled, and the decision became final, settling for all time the rights of the parties to that suit to the property involved therein.

The present is an application by the widow of Thomas Bibb, jr., for dower in the same lands, the title to which, it was determined in that suit, passed from Thomas Bibb, jr., and his heirs, by his death, "leaving no lawful male issue." We are asked to review the decision pronounced in that cause.

Thomas Bibb, sr., died in 1840, and his will should be construed according to the law as it stood at that time. Two objections are urged against the legality of the devise over to David Porter Bibb; first, that it contemplates an indefinite failure of issue of Thomas Bibb, jr.; second, that not being within the terms of the proviso to the 10th section

of the act of 1812, entitled "An act to amend an act respecting conveyances," (Toulmin 15, Laws of Alabama, 247 ; Clay's Digest, 157, § 37), the devise over must fail. The first of these objections was considered and passed on in the case of *Edwards & Wife v. Bibb*, 43 Ala. 666. It was there said : "We entertain the opinion that the testator intended to confine the words, 'leaving no lawful male issue,' to the male issue of Thomas Bibb, living at his death." We think the words of the devise are fairly susceptible of the above construction, and we adhere to it, and agree with our predecessors that "this contingency would not be too remote."— See page 674.

The second objection to the devise over was not discussed in the case cited, although necessarily implied in the result. It arises under the 10th section of the act of 22d December, 1812, which reads as follows :

"That every estate in lands or slaves, which now is or shall hereafter be created an estate in fee tail, shall from henceforth be an estate in fee simple, and the same shall be discharged of the conditions annexed thereto by the common law, restraining alienations before the donee shall have issue, so that the donee, or person in whom the conditional fee is vested, or shall vest, shall have the same power over the said estates, as if they were pure and absolute fees ; *Provided*, that any person may make a conveyance, or demise of lands to a succession of donees then living, and the heir or heirs of the body of the remainderman, and [in] default thereof, to the right heirs of the donor in fee simple." In the case of *Simmons v. Augustin*, 3 Port. 69, this statute first came up for construction. The question was whether the donee, Thomas J. Augustin, took the absolute fee in the lands which he could convey, and had conveyed in his life time ; or whether the title, on his death, passed to Martha Augustin, his daughter, as a purchaser. The deed was styled "entailed deed of gift," and its granting clause was "to Henry W. and Thomas J. [Augustin] and the legal heirs of their bodies forever, after the demise of the" donor. There had been partition of the lands between Henry W. and Thos. J. Augustin, and the latter had conveyed, and had died. Martha, the daughter of Thomas J., brought suit for the recovery of the lands which had been partitioned to her father. The question was ably argued, and Judge SAFFOLD delivered the opinion of the court, which was exhaustive and able. The decision was that the absolute title passed, under the deed, to the first taker, and that Martha Augustin did not take as a purchaser. In reference to the proviso in the statute, the court said, "that to constitute a valid limitation by deed, as

here contended for, the language prescribed in the statute, particularly the clause, 'and in default thereof, to the right heirs of the donor in fee simple,' must be adopted; and that for the want of such in this deed, it must, according to the direction of the statute, operate as a pure and absolute fee in the donees."

The case of *Martin v. McRee and Wife*, 30 Ala. 116, is based on *Simmons v. Augustin, supra*, and holds that to constitute a valid entailment, all the essential elements of the proviso to the 10th section of the act of 1812 must co-exist. In the will then construed, all the elements of the proviso were found, except that there was only *one*, and not "a succession of donees then living," and consequently there was not, and could not be a "conveyance or demise to the heir, or heirs of the body of the remainderman"; for there could be no remainderman. The court said, "the case presented by the fourth paragraph of the will is not the *specific case* provided for and saved by the proviso to said 10th section." This case carried the principle to the utmost possible limit.

The case of *Goldsby v. Goldsby*, 38 Ala. 404, although governed by the Code, and not by the act of 1812, is somewhat confirmative of the principle settled in *Simmons v. Augustin, supra*.

It is, perhaps, proper to remark that although the 10th section of the act of 1812 converts every estate in "lands and *slaves*" which now is, or shall hereafter be created an estate in fee tail, into an estate in fee simple," yet the proviso which permits a certain species of entailment, is limited to lands. The same distinction is preserved in the Code, except that instead of *slaves*, the Code employs the phrase, *personal property*.—See sections 1570, 1578, 1579 Rev. Code.

In the case of *Williams v. Graves*, 17 Ala. 62, the subject of the suit was slaves. Each party claimed under a will, which contained the words proper to create an estate tail. The bequest to the first takers contained words of inheritance, creating, or purporting to create an estate in fee tail, with an attempted limitation or executory devise over in the following language: "If either of my said daughters should die without an heir of her body begotten, the property so willed them, or the one so dying without an heir, the property of this one to pass off and become the property" of another. This court held that the limitation over was good as an "executory devise." In this case there was no allusion made to the act of 1812.—See Williams on Per. Prop., side page, 302; *Lenoir v. Rainy*, 15 Ala. 669; *Machen v. Machen, ib.* 373; Keyes on Chat., §§ 24, 250, 251. In the case of *Machen v. Machen*, and *Lenoir v. Rainy, supra*, it was decided

that the attempted remainder in the one and reversion in the other, did not take effect.

In the case of *Williams v. Pearson*, 38 Ala. 299, the subject of controversy was both real and personal property. The bequest was to the testator's daughter, and to the "begotten heirs of her body"; and "if she should die without a surviving heir or heirs of her body," then over, for the benefit of certain named charities. She did die without "begotten heirs of her body," and the question was whether the remainder over was good. In this case, as in the case of *Williams v. Graves, supra*, the court did not refer to the statute of 1812; and did not refer to the rule of the common law that estates tail can not be created in personal property. The court said: "The estate which the daughter took under the 6th item of the will was a fee, determinable on her dying without a surviving heir or heirs of her body." And so the remainder in favor of the charities was upheld as a valid executory devise.

Some stress has been laid on an expression found in *Mason v. Pate*, 34 Ala. 392, relating to section 1570 of the Revised Code. The expression is : "It controls conveyances to A and the heirs of his body, and converts the estate created thereby into a fee simple in A, instead of a fee tail, as it existed at common law." Again, on page 390 : "It [ § 1574 Revised Code] also embraces all cases where an estate is given generally to A, followed by the words *with remainder*, or *at the death of A*, (or other equivalent expression,) to the heirs' issue, or heirs of the body of A."

The will which was construed in the case of *Mason v. Pate*, was made after the Code of 1852 became operative. It was controlled by its provisions. We apprehend that sections 1570 and 1578–9 of the Revised Code, construed in *pari materia* with section 1574, will require a very different construction from that which was given to the act of 1812 in the case of *Martin v. McRee*.

It will be seen by the authorities above cited, that the 10th section of the act of 1812 has, in two well considered cases (*Simmons v. Augustin* and *Martin v. McRee*,) been construed as prohibiting the creation of an executory devise, contingent on the termination of an estate, good at common law as an estate tail, unless the limitation is expressed in language substantially equivalent to that found in the proviso to that statute.

On the other hand, devises and bequests over, dependent on the termination of estates which were so phrased as to create estates tail at common law, have been upheld in the cases of *Williams v. Graves*, and *Williams v. Pearson, supra*,

and in the case of *Edwards & Wife v. Bibb*, 43 Ala., constru-
ing the will now under discussion.

In the case of *Simmons v. Augustin*, no question was pre-
sented of a devise or conveyance over, after the extinction of
the issue in tail. The only question presented was, did the
heir in tail take as a purchaser? It was decided that she
did not.

The case of *Martin v. McRee*, presented the question of re-
version. The cases of *Williams v. Graves, Williams v. Pear-
son*, and *Edwards v. Bibb, supra*, each and all presented the
question of the validity of the devise over. The cases of
*Simmons v. Augustin* and *Lenoir v. Rainey*, arose under deeds.
The other cases cited from our reports arose under wills.

A difference of phraseology between the declaratory clause
and the proviso in the 10th section of the act of 1812, has
not heretofore been commented on. The section declares
"That every estate in lands or *slaves* which now is, or shall
hereafter be *created* an estate in fee tail," &c. The word
"created" is broad enough to include devises as well as con-
veyances. The proviso is: "Any person may make a con-
veyance or demise of lands to a succession of donees then
living," &c. The first provides for both lands and *slaves*, and
interdicts entailment. The proviso authorizes entailment of
*lands* by *conveyance*, to a certain extent. Whether any legal
consequences grow out of this change of phraseology, it is
not our purpose at this time to inquire.

The question considered above has been raised and con-
sidered under statutes very like ours, in several of the States
of this Union; and in the States of Virginia, New York,
Georgia, Ohio and Mississippi, it was held that a limitation
over by way of executory devise could not be engrafted on
an estate tail.—See *Carter v. Tyler*, 1 Call. 164; *Hill v.
Burrow*, 3 Call. 342; *Tate v. Tally, ib.* 354; *Jiggets v. Davis*;
1 Leigh, 368; *Thomason v. Anderson*, 4 Leigh, 126; *Lee v.
Craig*, 8 Leigh, 449; *Tinsley v. Jones*, 13 Grat. 289; *Gray v.
Gray*, 20 Geo. 808; *Lott v. Wykoff*, 2 Comst. 355; *King v.
King*, 12 Ohio, 473; *Jordan v. Roach*, 32 Miss. 481.

A similar statutory provision received a different construc-
tion in North Carolina.—See *Jones v. Spaight*, 1 Car. Law
Repository, 544; *Dew v. Zollicoffer*, 4 Dev. & Bat. 438.

I feel constrained to say the number, if not the weight, of
adjudged cases fully sustains the principle declared in *Sim-
mons v. Augustin*, and would lead to the conclusion that Thos.
Bibb, Jr., took a fee simple in the Belmina estate.

My brother Manning, however, thinks that the decision
made in *Edwards & Wife v. Bibb*, 43 Ala. 666, should be ad-
hered to. He cites *Williams v. Graves, Williams v. Pearson*,

(31)

*supra*, and the opinion of Chief Justice DARGAN in *Flinn v. Davis*, 18 Ala. 132, in support of the proposition that the limitation in the present case is not too remote, and that the executory devise over is good. He is also of opinion that inasmuch as no controversy was had with devisees in remainder in the cases of *Simmons v. Augustin*, *Martin v. McRee*, or *Goldsby v. Goldsby*—the last named two being cases of reversion—these cases are less authoritative on the point we are considering, than are the cases of *Williams v. Graves* and *Williams v. Pearson*. On this question I yield the inclination of my mind to his, and the result is that, on this point, the decree of the chancellor is affirmed.

I confess myself not much averse to this result. Under the decision in *Edwards & Wife v. Bibb*, 43 Ala. 666, the estate of Thomas Bibb, Jr., has forever lost the lands in controversy, under the ruling in that case that the title in him became extinct at his death, because the limitation was effective. If it should now be held that his widow is entitled to dower in the same lands, because the same limitation over is inoperative to devest the title of the first taker, this would present a result at least somewhat startling. The repose of society and the stability of titles plead earnestly for adherence to a decision of this, the court of last resort, when it has, after most exhaustive argument, solemnly construed a muniment of title.—See *Alabama Life Insurance and Trust Co. v. Boykin*, 38 Ala. 510.

It results from what we have said above, that under the will of Thomas Bibb, sr., Thomas Bibb, jr., took an estate, determinable on his dying "leaving no male issue"; and that inasmuch as he did so die, the executory devise over to David Porter Bibb took effect at the death of the former. We shall, consequently, in the discussion of the remaining questions presented by this record, deal with the subject as if there were no words of entailment in the devise we are considering.

Under this will thus construed, Thomas Bibb, jr., either took a fee simple, having another fee engrafted upon it by way of executory devise, to come into being on the happening of an event therein provided for as a conditional limitation, or he took only a life estate, and at his death, his lawful male issue, if he had left such, would have taken as purchasers. If the latter be the true construction of the devise, no one will contend that Thomas Bibb's widow would be dowable of the lands. Supposing, then, that the estate of Thomas Bibb was a defeasible fee, the question comes up, is his widow entitled to dower, the estate of her husband having expired with his life?

[Edwards and Wife v. Bibb et al.]

Few questions of the law have been more discussed, or have given rise to more perplexing distinctions than that of the widow's right to dower in lands, the title to which passed out of her husband contemporaneously with his death, by force of some limitation, reversion or remainder. The case in hand is one of remainder, which has taken effect. The question is thus stated by a very accurate writer: "Is the widow entitled to dower after the estate of her husband has determined, before its natural expiration, by the happening of an event particularly mentioned in the instrument creating it, but without disturbing or overreaching his prior seisin?"

The case of *Buckworth v. Thirkell*, is one of the first cases on this question.—3 Bos. & Pul. 652, note. That case came before Lord MANSFIELD, one of England's greatest jurists, and it was determined that the husband was entitled to curtesy. The rule in regard to dower is the same on this question as that in regard to curtesy.

The case of *Buckworth v. Thirkell* has not had the good fortune of commanding universal assent. Mr. Butler, in his note to Coke upon Littleton, page 141, while conceding that upon the termination of an estate tail by the failure of issue, the right of curtesy or dower will attach as a prolongation of the estate, yet contended that when a fee simple is determined by a valid executory devise, neither curtesy or dower ensues. Other writers contend for the same distinction.—See very full discussions of this question in Park on Dower, page 157, *et seq.*; 1 Scrib. on Dower, 284, *et seq.* To follow them through the shadowy mazes of their disquisitions would tend rather to bewilder than instruct. The human mind is not wont to rest satisfied with distinctions when it can find no substantial differences to rest them on.

Speaking of dower, as affected by conditional limitations, Chancellor KENT says: "The estate of the husband is, in a more emphatical degree, overreached and defeated by the taking effect of the limitation over, than in the case of collateral limitation"; and, he adds, "the ablest writers on property law are evidently against the authority of *Buckworth v. Thirkell*, and against the right of the dowress when the fee of the husband is determined by executory devise, or shifting use."—4 Kent's Com. 50.

Mr. Jacob, in his learned note published in the appendix to 2 Bright on H. & W., p. 468, says: "Upon the introduction of conditional limitations by way of use and executory devises, it became a question whether dower or curtesy should cease when the estate was determined by either of these modes. Upon principle, it would seem that the decision

[Edwards and Wife v. Bibb et al.]

of this question ought to be guided by analogy to the general rule of the common law, and not by analogy to the excepted case of an estate tail. . . . The conditional limitation destroying the estate, defeats the whole of that which is expressly granted. It would be singular, if that which is included in the grant by implication only, could be preserved." He adds, "The supposed rule, (speaking of Mr. Preston's attempt to justify the rule laid down in *Buckworth v. Thirkell*,) rests on very doubtful grounds."

In New York, it was decided by Chancellor WALWORTH that where an estate in fee was terminated by the happening of a conditional limitation, and the executory devisees took as purchasers, the widow of the first devisee could not have dower.—See *Adams v. Beekman*, 1 Paige, 631.

In the case of *Weller v. Weller*, 28 Barbour, 588, the same question arose as in *Adams v. Beekman, supra*. The court said, "The widow takes her estate through the husband, and not from him like one who inherits; for he can do no act which will divest her right. And when the estate of the husband is determined by the happening of an event which defeats its further continuance, the estate in dower must be determined with it. It is a part of the same estate of freehold and inheritance of which the husband was seized, and, to the extent of it, so much abstracted from what would otherwise descend to the heirs at law. . . . The wife's right to dower ceased with the estate out of which it could only proceed. This conclusion conflicts with Lord MANSFIELD's judgment in *Buckworth v. Thirkell*. It is the rule, however, given by Mr. CRUISE in his treatise on the law of real property, and is the rule now sustained by Mr. PARK with singular ability in his work on the law of dower."

WASHBURN, in his work on real property, vol. 1, p. 212, says: "There is a class of cases where, what at first sight might seem to be an inconsistent doctrine is applied. Thus, in the familiar case of tenant in tail dying without issue, although the estate, as one of inheritance, is determined, and the remainder over upon such a contingency takes effect, yet, it having been an estate of inheritance in the tenant, his widow, if he dies, will be entitled to dower, it being by implication of law annexed to such an estate as an incidental part of it, a portion of the quantity of enjoyment designated by the terms of the limitation itself. And the doctrine is broadly laid down by writers upon the subject, that wherever the husband is seized during coverture of such an estate, as is in its nature subject to the attachment of dower, the right of dower will not be defeated by the determination of that estate by its regular and natural limitation." He adds:

"This class of cases has given rise to much ingenious specu-lation and grave diversity of opinion, where the estate of the husband is one of inheritance, but ceases at his death by what is called a conditional limitation."

The case of *Buckworth v. Thirkell* was followed in *Moody and Wife v. King*, 2 Bing. 447; and in this country, in the cases of *Milledge v. Lamar*, 4 DeSaussure, (So. Ca.) 617; *Evans v. Evans*, 9 Barr. (Pa.) 190, and *Northcut v. Whipp*, 12 B. Monroe, (Ky.) 65. In a later case in South Carolina, *Wright v. Herron*, 6 Rich. Eq., the court of errors was equally divided, and no decision was pronounced. This case pre-sented the same question as the one presented in *Buckworth v. Thirkell.*

In the case of *Evans v. Evans, supra,* the opinion of the supreme court of Pennsylvania was pronounced by Chief Justice GIBSON—one of the ablest jurists that ever sat on that bench. It will be seen that he was laboring to break down the imaginary distinction attempted to be drawn by Mr. BUTLER and others between the cases of remainder-over, made and provided to take effect after the termination of an estate tail by failure of issue, and the termination of an estate in fee simple by failure of heirs, with a valid limitation over by way of executory demise. He says: "I can not appre-hend the reason of his [Mr. Butler's] distinction between a fee limited to continue to a particular period at its creation, which curtesy or dower may survive, and the devise of a fee simple, or a fee tail, absolute or conditional, which, by sub-sequent words, is made determinable upon some particular event, at the happening of which curtesy or dower will also cease." He propounds, and in effect answers, the following pertinent inquiry, "How to reconcile to any system of reason, technical or natural, the existence of a derivative estate, after the extinction of that from which it was derived, was for him [Mr. Butler] to show; and he has not done it."

Any attempt to maintain a distinction between the claim of dower or curtesy, when the inheritance in an estate tail has failed, and a limitation over has taken effect, *per formam doni*, and the same result when an estate in fee has been determined by the happening of the event upon which a conditional limitation over was made to take effect, by the terms of the instrument creating the title, is too artificial and technical to command our assent. Dower is a derivative estate; it is derived from the estate of the husband. It is the creature of the law, not of contract. While the husband lives, there is no estate in dower. It is an interest, carved out of, or abstracted from the inheritance; or out of the estate of the husband's alienee, if the widow survives, and

[Youngblood v. Youngblood.]

has not relinquished her dower. The husband, by any conveyance made, or recovery suffered by him, can not bar, or impair her right.

When, however, by the very terms of the conveyance or devise, legal in form and purpose, the estate of the husband expires with him, cutting off *per formam doni*, the heritable quality of his estate, and the title passes to another as purchaser by a valid limitation over, the primitive estate is gone, and there is nothing left from which dower can be derived. We do not declare what would be the result, if the case were one of mere reversion to the demisor or grantor. It will be time enough to consider that question when it arises.

Decree affirmed.

Chief Justice BRICKELL, having been of counsel, not sitting.