WILLIAM H. SCHNERINGER ET AL., APPELLANTS, v. HALL
B. SCHNERINGER ET AL., APPELLEES.

FILED MAY 7, 1908. No. 15,125.

1. **Constructive Trusts.** Where a mother during her last illness, believing that she will not recover, conveys all of her real estate to her husband at his request, and upon his oral promise to devise said real estate to their demented child and care for him during the father's natural life, though no express trust is created, a court of equity may interpose to prevent a wrong, and declare the grantee a trustee *ex maleficio* for the protection of the grantor's intended beneficiary.

2. ————: In the foregoing case, the father, the day succeeding the

execution of the deed, made a will complying with that part of his agreement. *Held,* That the deed and will were parts of the same transaction, and that the grantee will not be permitted to revoke the will or incumber or dispose of said real estate to the detriment of his incompetent child.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*Sullivan & Squires,* for appellants.

*A. Wall* and *C. L. Gutterson, contra.*

ROOT, C.

January 8, 1905, Missouri J. Schneringer departed this life, leaving surviving her husband, the defendant Hall B. Schneringer, and eight adult children, including the plaintiff Mark, who is mentally and physically incompetent. August 29 preceding her death she conveyed by warranty deed to her husband a half section of land in Custer county, which is the bone of contention here. The children other than Mark claimed that their mother was tricked and defrauded by their father into making the deed, and that she believed at the time of its execution, and died in the belief, that said instrument was a will whereby she had provided for their brother Mark. Six of the children executed deeds for said land to their brother William as trustee for their demented brother, and this action was brought by said trustee, joining Mark as plaintiff, and against the father and a second wife, to have said deed canceled and held for naught for the reasons aforesaid. After all the evidence had been introduced the court permitted plaintiffs, over defendants' objections, to file an "amended and supplemental petition," charging that since the commencement of the action plaintiffs had learned that their father claimed he had taken the title to said land for his own benefit during his natural life and in trust for the support of Mark, and upon the parent's death the fee simple title to vest in said son; that Hall B. Schneringer had executed a will

in conformity with the trust, but had thereafter married and had mortgaged the land, and with the proceeds had purchased 80 acres of land as a present for the second wife, and that she claimed dower and homestead rights in the Missouri J. Schneringer land; that Hall B. Schneringer had incapacitated himself from administering the trust, and plaintiffs prayed that he be held as trustee *ex maleficio,* and for equitable relief. The last pleading seems to have been filed as an amendment to the original petition. The district court found generally for defendants and dismissed the petition, and plaintiffs appeal.

1. From a consideration of the evidence we find the facts to be that the southeast quarter of section 7, in township 15, range 23, was entered by defendant as a tree claim, and that after a patent was issued he conveyed said land through a trustee to his wife in consideration that she would join with him in mortgaging their homestead to secure money for defendant's use; that defendant purchased the east half of the northeast quarter of said section 7, and the south half of the southeast quarter of section 6, in said town and range, in 1898, and that the vendor at defendant's direction conveyed the land direct to Misssouri J. Schneringer for the purpose of hindering and delaying defendant's creditors in the collection of his debts; that plaintiff Mark Schneringer has heretofore been, and in all probability during his natural life will be, physically and mentally incompetent. The mother's affections seem to have been centered in her unfortunate child, and she sought by every means within her power to minister to his comfort during her life and to provide for his maintenance after her death. Mrs. Schneringer about the month of July, 1904, was stricken with dropsy and heart disease, and died in January following. She knew her illness was mortal, and with that understanding entered into an arrangement with her husband, and at his request conveyed the farm to him that he might have a home during his declining years safe from the claims of their children other than Mark, and

to the end that Mark should be cared for and supported by his father so long as the parent should live, and with the further oral agreement that the father should will the farm to said son. Mark Schneringer, Sr., defendants' brother, was mutually selected by the parents as guardian for their afflicted son. In conformity with this agreement, Missouri J. Schneringer on the 29th day of August signed and acknowledged a deed conveying the farm to her husband, and the succeeding day he executed his last will and testament, and thereby devised and bequeathed to his son Mark all and singular his estate, real and personal, and provided that, if the wife survived the husband, she should have the use of the estate during her life, subject to the support of Mark, and upon her death the estate should vest in said son. It does not appear that the will has been revoked. Thereafter Hall B. Schneringer married the defendant Mary M. Schneringer, and mortgaged the tree claim for $800 to raise money, which he used in purchasing 80 acres of land for his second wife. The evidence does not establish the description of said tract.

Hall B. Schneringer has supported his son Mark since Missouri's death, but he has denied the trust, and is unlawfully encumbering the estate, so that the *cestui que trust* is entitled to relief. Hall B. Schneringer strenuously denies making any such arrangement with his wife, or that she requested him to care for Mark, or make the will he did, or any other will, but the circumstances as shown by the evidence point unerringly to the conclusions we have adopted. The deed was prepared by Mr. Brega, a lawyer and notary, who was called by defendant as a witness, and on cross-examination, without any objection from defendant, he testified that Hall B. Schneringer came to him some days before the deed was made and talked over the transaction; that Brega suggested that the wife make a will, but finally it was settled that a deed from the wife and a will by the husband should be executed. "He came to me to have the papers made out,

and wanted a will and wanted to make a deed, and he told me he wanted to do that, and he told me, if his wife outlived him, he wanted her to have a deed, and, if he outlived her, he wanted to have a deed so it would go in the end to the boy. * * * I can't remember the words he used. He wanted me to fix it so that, if he outlived his wife, he would have the use of the land, and, if his wife outlived him, she would have the use of it, and in the end it would go to the boy Markie." Witness says he understood that the will and deed were parts of one transaction. About that time defendant called on his brother Mark, and told him that "Jane," the wife now deceased, wanted him to act as Markie's guardian, and he finally agreed to do so. Prior to making the deed the mother expressed great concern over Markie's future, and contemporaneous with the execution of the deed and at intervals thereafter expressed herself as ready to die; that she was satisfied, because she had provided for Markie; that a will had been made willing the land to him, and that his uncle Mark had been appointed guardian. It also appears that before this time the husband had earnestly and unsuccessfully importuned his wife to convey the land to him. She was illiterate, reading and writing with great difficulty, and we do not doubt she believed the will her husband made was irrevocable. We are satisfied that the husband was an active factor in securing title to the land, and that the wife signed the deed upon his explicit promise to devise the real estate to said son and to care for him during the father's natural life. Not only were the deed and will parts of one transaction, but the former was secured by reason of the confidential relations existing between the grantor and grantee, and while the grantor was in contemplation of death, and was made for the purpose of distributing the grantor's estate among those nearest her heart, the husband and her afflicted child. In all human probability, if defendant had not remarried, he would have held the land unincumbered for the benefit of himself and his son Mark, but he has

violated his promise, mortgaged the land, and ignored the trust. A plainer case for equitable relief was never presented to a chancellor, and a decree should be entered to make effective the dying mother's provision for her demented child. *Smullin v. Wharton,* 73 Neb. 667; *Hoge v. Hoge,* 1 Watts (Pa.), 163, 36 Am. Dec. 52; *Gilpatrick v. Glidden,* 81 Me. 137, 10 Am. St. Rep. 245; *Ahrens v. Jones,* 169 N. Y. 555, 88 Am. St. Rep. 620; *Laird v. Vila,* 93 Minn. 45, 106 Am. St. Rep. 420. Under the circumstances, the second wife is not seized of any dower, homestead or distributive interest in said land, but, on the contrary, the 80 acres presented to her by her present husband should be impressed with a lien as security that the $800 mortgage placed on the Missouri J. Schneringer land shall be released.

Defendants insist that William Schneringer is not a proper party plaintiff. The petition sufficiently alleges the incompetency of Mark Schneringer, Jr., and we are of opinion that William may and will be considered as the next friend of his coplaintiff. *Wager v. Wagoner,* 53 Neb. 511. Plaintiffs have filed a brief with 74 pages of an abstract of the evidence, which defendants challenge as incorrect. Because counsel have not agreed upon this point, we have read the bill of exceptions, and the cost of printing those 74 pages of the brief will be taxed to plaintiffs.

It is recommended that the judgment of the district court be reversed and the cause remanded, with direction to the district court to take testimony to establish the identity of the land purchased by Hall B. Schneringer for Mary M. Schneringer with the proceeds of the mortgage referred to in this opinion, and then that it enter a decree not inconsistent with this opinion.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed

and the cause remanded, with direction to the district court to take testimony to establish the identity of the land purchased by Hall B. Schneringer for Mary M. Schneringer with the proceeds of the mortgage referred to in this opinion, and then that it enter a decree not inconsistent with this opinion.

REVERSED.