## RACHEL BAKER, Appellant, v. BELLE SYFRITT and others, Appellees.

**Wills:** JOINT OR MUTUAL INSTRUMENTS: VALIDITY: PROBATE.   The joint or mutual character of a will does not in itself affect its validity, and if otherwise valid it may be probated and enforced as the will of the testator dying first, or as the separate will of each, or as the joint and mutual will of both, according to its nature and terms; and where such a will is reciprocal merely its probate as the will of the first deceased is usually all that is necessary to accomplish the intended purpose.

**Same:** PROBATE OF JOINT WILLS.   Where the makers of a joint will own and hold the property devised in severalty only, the instrument may well be treated as the individual devise of each and successively probated as such; but where the property is owned jointly it has been held that while the instrument may be probated as the separate will of each, it is proper to await the death of the survivor and then probate it as the joint will of both.

**Same:** AGREEMENT TO MAKE WILL: JOINT OWNERSHIP.   A will is not a contract, yet the terms and benefits thereof may be the subject of contract; so that where a husband and wife dispose of property held by them in severalty by a joint will, and in so doing declare in express terms that they are in fact joint owners thereof, the court will treat the property, on the assumption that it represents the fruit of their joint labors, as being a common estate at the date of the will.

**Joint or mutual wills:** REVOCATION.   Where two persons competent to make a testamentary disposition of their property enter into a contract by which they unite in devising their joint or several estates to a designated third person, subject to a life estate in the surviving testator, and upon the death of one the survivor avails himself of the benefits of the will in his favor, he can not thereafter revoke the will but will be treated as holding the property in trust for the purpose indicated in the compact.

**Same:** RELINQUISHMENT OF DOWER.   A husband and wife may agree to unite their separate estates in the creation of a trust for the benefit of a third person, who shall come into the legal title and right on the death of the surviving testator; and where they exe-

VOL. 147 IA.—4.

cute a joint instrument clearly expressing such purpose, it will
be treated as a relinquishment of any dower right in the prop-
erty, whether termed a contract, will or conveyance. And where
the will, as in this case, provided that the surviving testator
should hold the same for life, and as such survivor the husband
probated the same 'and enjoyed the benefits arising therefrom,
he took simply a life estate, and a remarriage did not reinvest
him with a heritable estate, in which his widow by the subse-
quent marriage could acquire a dower interest.

*Appeal from Pottawattamie District Court.*—HON. A. B.
THORNELL, Judge.

SATURDAY, APRIL 9, 1910.

ACTION in equity for the partition of real estate. The
cause was submitted and decided upon the pleadings filed
and a statement of agreed facts. Decree for defendants,
and plaintiff appeals.—*Affirmed.*

*Kimball & Peterson* for appellant.

*W. S. Baird* and *McKenzie & Howell* for appellees.

WEAVER, J.—On September 21, 1889, John Baker
and Harriet Baker were husband and wife, residing in
Council Bluffs, Iowa. There were no children of this
union, but the wife had children by a former marriage.
John Baker then held in his own name the legal title to
forty acres of land and to the homestead property occupied
by them, while the wife held in her own name the legal
title to another forty acre tract. They were well advanced
in age, and on the day named united in the execution of
a joint will. It is drawn in formal terms, and, omitting
provisions not directly involved in this controversy, its
three principal paragraphs are as follows:

Item First. All our property being held by us jointly,

share and share alike, both real and personal, it is our
wish that the one of us surviving shall hold the same and
have the use and benefits thereof, and rents and profits
arising therefrom, during the period of his or her natural
life, and it is accordingly by us so bequeathed and devised
unto the survivor of us during the period of the survivor's
natural life.  .  .  .

Item Third.   After the death of the survivor of us,
as aforesaid, it is our wish that the property on McPherson
Avenue, in the city of Council Bluffs, Iowa, more particu
lary described as a part of. lot 2 in subdivision of south-
east quarter of northeast quarter of section 30, township
75 N., range 43 west, which is the homestead on which
we now reside, together with building adjoining, should
become the property of Belle Syfritt, of Kansas City,
Missouri, daughter of our niece, Belle Burton, during her
life, and we do therefore devise the property aforesaid to
her, the said Belle Syfritt, for her use and benefit during
the period of her natural life with remainder at her death
to her children.   If she die without issue surviving her,
then remainder to our residuary legatees hereinafter
named.  .  .  .

Item Sixth.   After the death of the survivor of us, and
after the payment of our debts and after the payment of
the two bequests above set forth, it is our wish that the
rest, residue and remainder of our estate, real and personal,
left thereafter, shall descend and rest in our beloved
children W. J. Westrip, J. H. Westrip and F. G. Westrip
of Council Bluffs, Iowa, share and share alike in fee
simple and we do so devise and bequeath the same.

Harriet Baker died in November, 1900, and soon there-
after her husband caused the joint writing above mentioned
to be probated as her last will and testament, and was ap-
pointed administrator with will annexed to her estate.   He
took and held the possession and enjoyed the use, rents,
and profits of all the property and estate left by his said
wife, and continued therein during the remainder of his
life.   He appears to have made no objection to the will,
or to any of the provisions thereof, nor did he ever file a
statement of his consent thereto or an election to take

under the will, unless the filing of the joint will with his signature thereto may be construed as such consent. No notice to make an election was ever served on him. In July, 1901, he married the plaintiff herein, Rachel Baker, and in February, 1908, died. He made no other will than was contained in the joint instrument above mentioned, and this was duly admitted to probate as his last will and testament.

The petition herein alleged that John Baker died seised of the forty acre tract and homestead property of which he held the legal title, and of an undivided one-third interest in the forty acres of which his former wife held the title, and that plaintiff as his surviving widow is now entitled to have set off to her one-third in value of all said property. To this proceeding she makes the heirs of John Baker and Harriet Baker and the beneficiaries under their joint will parties defendant, and asks to have the property partitioned accordingly. The defendants answer, denying that at the time of his marriage to plaintiff, or at any time thereafter, John Baker owned any right or interest in the real estate mentioned in which plaintiff obtained, or could obtain, a right of dower or right to a distributive share after his death. They pleaded the making of the joint will, the probating thereof at the instance of John Baker, and allege that by filing said joint instrument with his own signature thereto, and without objecting thereto or repudiating its terms, he consented to take under said will. They further allege and claim that, while testamentary in form and in some of its effects, said joint instrument constituted a valid contract between the husband and wife for the present transfer of their common estate to the beneficiaries named therein, reserving to themselves and to the survivor of them a life estate in all said property, and that upon the death of Harriet Baker and the probate of her will without objection made thereto by the said John Baker, and his acceptance of the benefits of the provision

thereof made in his favor, said contract became irrevocable, and that thereafter he could not make any valid conveyance or devise inconsistent with said will, nor could he by marriage with plaintiff confer upon her any interest in said property or estate which would defeat in whole or in part the terms of said contract.  It is further alleged that by virtue of said contract between the husband and wife, and by the acceptance by said husband of the benefits thereof after the death of the wife, all of said property became and was in his hands a trust fund for his use during his life, and for the preservation of the principal thereof for the benefit of the named beneficiaries at his death, and that said trust was in fact accepted and performed by him.  Plaintiff took issue by reply to the affirmative matters set up in the answer.  The court held with the defendants upon the law of the case, and plaintiff appeals.

It will be observed that the pleadings state much in the nature of mere legal conclusions, but as it serves to make clear the position taken by the respective parties, we have set them forth with some degree of particularity.  The question thus presented is a novel one in this jurisdiction, and the industry of counsel on either side has not been fruitful in the discovery of many precedents directly in point. The subject of joint and mutual wills has been quite frequently before the courts, and while there have been some decisions and more frequent *dicta* to the effect that such an instrument is unknown to the law, the greater weight of authority and the better reason is with the view that the joint or mutual character does not of itself affect its validity, and that, if otherwise valid, it may properly be probated and enforced as the will of the one first dying or the separate will of each, or as the joint and mutual will of both according to the nature and terms of the provisions embodied therein.  Of the cases denying the validity of such wills perhaps the most elaborately considered by

1. WILLS: joint or mutual instruments: validity: probate.

a court of our own country is *Walker v. Walker,* 14 Ohio St. 157 (82 Am. Dec. 474), where the authorities usually relied upon as supporting that view are very generally cited and approved, though by a divided court. The other, and at this time the most commonly accepted, view finds support in numerous cases, among which we may cite, *Ex parte Day,* 1 Bradf. Sur. (N. Y.) 476; *Will of Diez,* 50 N. Y. 88; *Betts v. Harper,* 39 Ohio St. 639 (48 Am. Rep. 477); *Will of Davis,* 120 N. C. 9 (26 S. E. 636, 38 L. R. A. 289, 58 Am. St. Rep. 771); *Dufour v. Periera,* 1 Dick. 421; *Schumaker v. Schmidt,* 44 Ala. 454 (4 Am. Rep. 135); *Breathitt v. Whittaker,* 8 B. Mon. (Ky.) 530; *Raine's Case,* 1 Swa. & T. (Eng.) 144; *Black v. Richard,* 95 Ind. 184. And see 1 Jarman on Wills, 27; Schouler on Wills (2d Ed.) section 457. When such wills are reciprocal merely—that is, where the provision is that the survivor shall succeed to the estate and interest of the first to die—there is ordinarily little or no room for doubt concerning the construction or effect of the instrument, and, generally speaking, its probate as the will of the first deceased is all that is necessary to accomplish the intended purpose.

When, however, such joint will undertakes to devise an estate to a third person, the solution of the question is not always quite so obvious. Where the makers of the will own and hold property in severalty, and none 2. SAME: probate of joint wills. jointly or in common, the devise, though joint in form, may well be treated as the separate and individual devise of each, and successively admitted to probate as such. But where the property devised is owned jointly or in common, it has been held that, while the will is admissible to probate as the separate will of each, it is proper to await the death of the survivor, and then admit it as the joint will of both. *Betts v. Harper,* 39 Ohio St. 639 (48 Am. Rep. 477).

The validity of the will now before us is not seriously

questioned but the claim is made by appellant that, conceding its validity in other respects, it did not affect the title or interest of John Baker in the land during his lifetime; that it was at all times revocable by him, and that, being seised of the title at and after the date of his marriage with plaintiff, her right of dower therein. can not be affected by the devise made in the will. Upon the point thus made hinges the disposition of this case. While the legal title to the lands in controversy was held by John Baker and Harriet Baker in severalty, they declare in express terms that they were in fact owners of it all jointly, or in common and equal right. The record does not disclose, but we may, perhaps, assume, that the property represented the fruit of their joint labors and efforts, and that, recognizing their obligations to each other, they were willing each to concede to the other an equal right in their accumulations. They had the authority to thus deal with their own, and we think the court is bound to treat the property as being at the date of the will the common estate of husband and wife. Their statement is in substance an admission by each that the legal titles held by them in severalty were in truth so held for the use and benefit of both. It has often been held that an agreement upon sufficient consideration to make a will is valid, and that upon breach of such promise the beneficiary thereof has a right of action for damages, or, under some circumstances, may enforce specific performance. And the person coming into the possession of such property otherwise than as an innocent purchaser is held in equity to be trustee thereof for him to whom it ought of right to have been devised. *Brandes v. Brandes,* 129 Iowa, 351; *Mueller v. Batchler,* 131 Iowa, 650; *In re Strang's Estate,* 131 Iowa, 596; *Bird v. Jacobs,* 113 Iowa, 194. It appears therefore that, although a will is not a contract, yet the terms and benefits of a will may be the subject of contract, and the rights thus

*3. SAME: agreement to make a will: joint ownership.*

lawfully accruing will be protected at law or in equity according to the circumstances of the particular case.

It is sometimes said that a will is essentially ambulatory, and subject to revocation at the desire of testator at all times until rights thereunder have become vested by death; and, while this is true as a general proposition, it is equally true that, where the will has been made pursuant to a valid contract, the testator can not by the act of revocation escape the obligations of his contract, nor will his heirs take any advantage by such revocation.

4. JOINT OR MUTUAL WILLS: revocation.

Now it is evident that where two persons unite in a joint will, whereby the survivor takes some benefit from the estate of the one first deceased, and such provision is coupled with another by which, subject to such right in the survivor, the estate of both is devised to a third person, there is an element of contract and mutual obligation between the makers, and when that devise becomes irrevocable, if it ever does, then there arises a vested right in the beneficiary of which he can not be arbitrarily deprived. It has been held by some authorities that such a will can not be revoked by either maker without notice to the other. *Robinson v. Mandell,* Fed. Cas. No. 11,959; *Dufour v. Periera,* 1 Dick. 419; *Breathitt v. Whittaker,* 47 Ky. 530. But however that may be, where one maker of such will dies before a revocation thereof by either, and the survivor accepts any benefit thereunder, we think it quite clear that he can no longer revoke, and that any attempt by him to divert the common estate in any other direction than is indicated by the common or joint devise is nugatory. The rule as deduced from the authorities by the author of the article on Wills in the American and English Encyclopedia of Law is stated as follows: "A mutual will is revocable by the testator at any time prior to his death, and this is so though he survives the other testator, *provided*

*he takes no advantage under the other's will."*   30 Am.
& Eng. Encyc. Law (2d Ed.) 621.

By most authorities the rule is stated in broader and
stronger terms.  In 1 Redfield on Wills, 183, it is said to
be the settled doctrine that joint or mutual wills, duly
executed, are irrevocable after the death of either maker.
In a note to 1 Jarman on Wills, 18, Mr. Bigelow says:

A will is none the less a will because it may be based
upon a binding contract, and yet the will in such case is
irrevocable.  .  .  .  If this is true in the case of an
ordinary will, the mere fact of irrevocability should not
be fatal to a joint or mutual will.  Indeed the doctrine
of the revocability of a will amounts merely to this:  That
a will is ambulatory during the lifetime of a testator, pro-
vided he has not bound himself not to change it.  Even
the *Walker* case, above cited as the leading American case
against the validity of a joint will, expressly leaves open
the question whether the agreement or compact evidenced
by such instrument may not be enforced in equity though
invalid as a devise.  The thought there suggested is ap-
proved and emphasized by the Missouri court in *Bower v.
Daniel,* 198 Mo. 289 (95 S. W. 347).  In that case, as in
the one at bar, a husband and wife united in a joint
will, giving to the survivor a life estate in the accumula-
tions resulting from their common efforts, with remainder
over.  The wife died first, and the husband availed him-
self of the provision made by the will in his favor, but
sought by making another will to divert the principal of
the estate to beneficiaries not named in the joint devise.
The court there held that equity would interfere to pre-
vent such a breach of trust.  In discussing the merits of
the case the court says: 'It is evident from the provi-
sions of the mutual or joint will that this aged or infirm
couple, each owning property, made said will together for
the purpose of disposing of and distributing their property
equitably among their children after their death.  After
the death of the testatrix, her husband, William Daniel,
accepted the provisions of the will in his favor, and under
such circumstances equity will enforce the provisions of the

will against him, and all persons holding under him, who took with notice of its provisions or without value.'

The cases cited in support of this doctrine are as follows: *Carmichael v. Carmichael,* 72 Mich. 76 (40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528); *Bruce v. Moon,* 57 S. C. 60 (35 S. E. 415); *Van Dyne v. Vreeland,* 12 N. J. Eq. 142; *Robinson v. Mandell,* 3 Cliff. (U. S.) 169 (Fed. Cas. No. 11,959); *Edson v. Parsons,* 155 N. Y. 555 (50 N. E. 265).

In the *Edson* case, *supra,* there were separate wills made by sisters, each making a provision in favor of the other, with a remainder or residue to a brother. After the death of the one sister the other made a new will, limiting the estate given the brother. He brought an action to enforce the provisions of the earlier will, alleging that the original separate wills made by the sisters were made each in consideration of the other, and that after the death of one testatrix the other could not rightfully revoke her devise. While refusing the relief because of the failure of proof of the plaintiff's case, the court, speaking by Gray, J., says:

I fully concede that there is no reason in law nor any public policy which stands in the way of parties agreeing between themselves to execute mutual and reciprocal wills which, though remaining revocable upon notice being given by either of an intention to revoke, become upon the death of one fixed obligations of which equity will assume the enforcement if attempted to be impaired by subsequent testamentary provisions on the part of the survivor. The proposition is one which may be regarded as having been accepted generally. 1 Jarman on Wills, *27; 2 Story's Eq. Juris., section 785; Schouler's Wills, section 454; *Lord Walpole's Case,* 3 Ves. 402. A court of equity would in such event proceed upon the ground that the survivor was bound not merely in honor, but by his agreement and by the acceptance of the benefit which that agreement procured for him. In such a case obviously no remedy at

law would be adequate to the party in whose interest and for whose ultimate advantage the testamentary agreement had been entered into. Therefore equity would perform its high function of supplying the relief which the rules of law are not sufficiently elastic to comprehend, and, recognizing the obligation which in conscience and honor rested upon the surviving party, would decree a specific performance of the testamentary agreement by compelling those persons into whose possession the property affected may have come to account for and deliver it over to the complainant for being impressed with a trust in his favor.

That the owner of property may by contract, or by conduct which estops him from denying it, transmute his legal title into a trust for the benefit of another person is too well settled to require discussion. Unless, therefore, the right has been restricted by statute (a question which we shall later consider), it would seem to follow of necessity from the equitable principles approved in the cited authorities that, where two persons competent to make testamentary disposition of property enter into a compact or agreement by which they unite in devising their joint or several estates to a designated third person, subject to a life estate in the survivor, and upon the death of the one the survivor avails himself of the benefits of the devise in his favor, he must in equity be treated as holding the title in trust for the purpose indicated in the compact which became irrevocable upon the death of the other party thereto. Taking this as the general rule, we have next to inquire whether an exception is to be recognized where the makers of a joint will are husband and wife, and whether its operation is affected by the statute concerning contracts between husband and wife, or by the statute governing the rights of either in the estate of a deceased spouse.

In this state a married woman is, equally with her husband, competent to dispose of her estate by will. Code, section 3270. Under our statutes, and according to numerous

decisions of this court, they may buy from and sell to one another, and the conveyance of real estate from one to the other is effective without the interposition of a trustee. Code, section 3157. The only limitation imposed by statute upon their competency to contract with each other in relation to their separate estates is found in Code, section 3154, which provides that neither has any interest in the property of the other which can be made the subject of contract between them. This restriction invalidates agreements the subject of which is the right which, by reason of the marriage relation, one of the parties has in property owned by the other. It goes no farther. *Baxter v. Hecht,* 98 Iowa, 534. The inchoate rights which each has in the property of the other by virtue of their marriage are not property, and the statute wisely provides that they shall not be the subject of speculative transactions between them, but they may freely deal with each other concerning property owned by either, although the near or remote result of their dealings may be the loss or extinguishment of an inchoate right. For instance, husband and wife may make a contract of partnership into which their individual property shall be merged as capital, thereby putting to risk the inchoate rights of each in the other's estate, but no one will contend that such an agreement is within the prohibition of the statute. *Hoaglin v. Henderson,* 119 Iowa, 720. If husband and wife each own a quarter section of land, and they enter into an agreement by which they unite and convey both tracts to a third person in exchange for a half section conveyed to the wife alone, it can not be doubted that this also is a perfectly valid transaction, although the result of it is a radical change in their inchoate rights. Each has relinquished such right in a quarter section, and the husband has acquired such right in a three hundred and twenty acre tract—all of which was necessarily involved in the original agreement between them. This

5. SAME: relinquishment of dower.

is not in violation of the statute, because the subject of the contract is tangible substantive property owned by the parties, while the effect upon their inchoate rights follows only as incident to changes in ownership of the fee, and is effected by operation of law.

Coming a step nearer to the case in hand we see no good reason why husband and wife may not agree to unite their separate estates in the creation of a trust for the benefit of a third person, who shall come into the legal title and right of possession upon the death of the survivor. If to that end they execute a joint instrument, clearly expressing their purpose, then, whether it be called a contract, compact, will, or conveyance, we think it should be treated as a relinquishment of dower right, or, at worst, when one maker has died without attempting to revoke it, the other should be held estopped to set up any right which tends in whole or in part to the defeat of the common purpose. A contract is none the less a contract because it contains provisions which are testamentary in character, nor is a will any less a will, if properly executed, because it embodies contractual features. *Carmichael v. Carmichael,* 72 Mich. 76 (40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528); *Schneringer v. Schneringer,* 81 Neb. 661 (116 N. W. 491). In *College v. Ritch,* 151 N. Y. 282 (45 N. E. 876, 37 L. R. A. 305), it is said: "If the testator either is induced to make a will, or not to change one after it is made, by the promise, express or implied on the part of a legatee, that he will devote his legacy to a certain lawful purpose, a secret trust is created on the part of the legatee, and equity will compel him to apply property thus obtained in accordance with his promise." To the same effect, see *Ahrens v. Jones,* 169 N. Y. 555 (62 N. E. 666, 88 Am. St. Rep. 620); *O'Hara's Will,* 95 N. Y. 403 (47 Am. Rep. 53). If, as in the cited cases, the rule is thus applied to promises, agreements, and inducements shown by evidence,

*aliunde,* there should be no hesitation over its recognition in a case where, as here, the compact and consideration appear upon the face of the instrument itself.

From whatever angle we approach the instrument in controversy we are led to the same conclusion that from the death of Harriet Baker and the probate of her will at the instance of John Baker, and his acceptance of its benefits, if at no earlier date, he held the title in trust for the beneficiary named in the writing. Indeed there is no evidence whatever that John Baker did not so understand his relation to the property, or that he intended in any manner to divert any part of the property from the course designated for it in the joint devise. If, therefore, the appellant is entitled to any part or share in said property, it is because she has acquired it by operation of law through her marriage with John Baker some months after the probate of the will of his first wife. And this her counsel say she did acquire under the statute. By Code, section 3366, widow is entitled to dower in all lands owned by her husband at any time during their marriage, and to which she has made no relinquishment. By Code, section 3376, it is provided that the right to a widow's share shall not be affected by any will of the husband. But it must be remembered that unless the husband has at some time during the marriage relation held a heritable estate of some kind—legal or equitable—in the property in question no right of dower could attach thereto in the wife's favor. The stream can not rise higher than its source. *Dunham v. Osborn,* 1 Paige (N. Y.) 634; *Pritts v. Ritchey,* 29 Pa. 71; *Apple v. Apple,* 38 Tenn. 348; *Edwards v. Bibb,* 54 Ala. 475; *Sullivan v. Sullivan,* 139 Iowa, 679.

If, therefore, we are correct in the conclusions already announced, and John Baker at the time of his marriage to the appellant herein held the legal title of the land in trust for the uses mentioned in the joint will made by himself and his former wife, then no right or dower ever arose

in appellant's favor.   Under such circumstances the statutes above cited, and on which counsel for appellant rely, can have no application.   In other words, neither a second marriage nor, as counsel suggests, the birth of a child of such union, could operate to reinvest the husband with a heritable estate with which he had already irrevocably parted.

This conclusion renders unnecessary any consideration of other questions argued by counsel. . The decree of the district court appears to have been right, and it is *affirmed.*