Mrs. Betty Volz Ashley, Mrs. Lina Volz Moore, Charles R. Volz, Jr., and Mrs. Jane Volz Lee

*v.*

George S. Volz and Mrs. Marion Lee Volz.

404 S.W.2d 239.

(*Jackson,* April Term, 1966.)

Opinion filed June 3, 1966.

J. D. SENTER, JR., Humboldt, and LARRY B. CRESON, JR., Memphis, LAUGHLIN, WATSON, GARTHRIGHT, & HALLE, Memphis, of counsel, for appellants.

JOHN M. DRANE, Newbern, and JOHN S. MONTEDONICO, Memphis, for appellees.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The purpose of this suit is to determine the rights of the survivor of a joint will to property he took thereunder. It is alleged he violated certain rights in making certain dispositions of the property received under this will and otherwise. A discovery is asked as to what he had done with the property, etc.

The appellants, complainants below, are the children of Charles R. Volz, deceased, and the grandchildren of the appellee, George S. Volz. The appellee, Mrs. Marion Lee Volz, is the second wife of the defendant-appellee, George S. Volz. The appellees, George S. Volz and Mrs. Marion Lee Volz, filed demurrers to the bill, all of which were sustained by the Chancellor. An appeal has been seasonably perfected, very able briefs filed by both sides, and excellent arguments heard. After spending something like a week reading the briefs, authorities cited and making an independent investigation of the matter, because of our interest in the question, we arrived at our conclusion which we will now attempt to set forth in this opinion.

George S. Volz and his wife at the time of the execution of this will, Mrs. Lola M. Volz, made a will on October 30, 1943, which as far as here applicable is:

"We, George S. Volz and Lola M. Volz, do hereby make and declare this as our joint will, irrevocable after the death of either, revoking any and all other wills prior.

"1. Upon the death of either of us all our property of every kind shall go to the survivor with exception of

a gift of one thousand dollars, each, as set out hereinafter to our sisters.

"And upon the death of the survivor of us, the unexpended residue that said survivor owns (including all after acquired property of all kinds which said survivor may own regardless of its source) shall go to Charles R. Volz, if living, if dead then all shall go to his children, share and share alike, the representatives of any deceased child to take the part that its parent (child of Charles R. Volz) would have taken if living."

Then follows the bequests of $1,000.00 to the sisters.

Mrs. Lola M. Volz died in December, 1948, and the joint will, above quoted, was duly probated and her husband qualified and was appointed Administrator C.T.A. of her estate and accepted the benefits accruing to him under this will.

The bill alleges that George S. Volz and Lola M. Volz had lived together in Ripley, Tennessee, for some forty-five years, and had the one child, Charles R. Volz, and that this child was in business with his father at Ripley. The will was prepared by a fine lawyer of that neighborhood who witnessed the will. It is alleged in the bill that some two years after the death of Lola M. Volz, the appellee, George Volz, married the appellee, Mrs. Marion Lee Volz, and they lived together in Ripley, and continued to reside in the residence which prior to the death of Lola M. Volz was individually owned by her.

It is likewise alleged that in 1961 George Volz executed a "Deed of Gift" of this residence to Mrs. Marion Lee Volz in fee and that shortly thereafter he contacted the appellants (the children of his deceased son, who is men-

tioned in the will) and attempted to get them to execute a contract agreement and release, whereby he asked them to relinquish any claims that they might have to this homeplace which he had deeded to their step-grandmother. He proposed in this contract agreement to execute a will leaving all his property to them except this homeplace, and he wanted to pay Mrs. Marion Volz $75,000.00 free and clear of all estate and inheritance taxes. Thus it was, after these two things had happened, the "Deed of Gift" of their grandmother's homeplace to their step-grandmother and the proposal to give this step-grandmother certain things that the present suit was filed in which it is averred under the terms of this joint will that Mr. George Volz having accepted and entered into this contract as is shown by the terms of the will that he has accepted this property, so to speak, in trust for them, and that he has no right to denude himself of the property thus received by giving it to his second wife or doing otherwise with the property than to preserve it in trust for these children, his grandchildren.

The demurrer essentially raises the proposition that these grandchildren have no present or existing right or interest in the assets of the estate and that at most they have only a possibility of a future interest in the property received by George S. Volz under this will and therefore their suit is premature; that under the terms of the will George S. Volz became vested with a fee simple title to the property and had an unlimited right to dispose of it as he saw fit; that for these reasons the grandchildren have no right for a discovery and injunction as they prayed for. As said above, this demurrer was sustained and the suit dismissed.

■ This Court in 1938 in the case of *Seat v. Seat,* 172 Tenn. 618, 113 S.W.2d 751, held that where a husband and wife executed a joint will, leaving all their property to the survivor for life and then one-half to the husband's heirs and one-half to the wife's brother and sister, and the will was not revoked before the husband died, that the wife could not repudiate the contract and defeat the interest of her husband's heirs by dissenting from the will. The Court very correctly held that the will is revokable, but where it is coupled with a contract then the contract cannot be breached by revoking the will. In other words, it is the contract, not the will, that must be established. When a joint will was thus made pursuant to a contract or agreement between the parties the Chancery Courts of this State will entertain jurisdiction by enforcing the specific performance of the contract in accordance with the provisions of the will. This Court in the *Seat* case, supra, made this statement:

"The fact of a concurring purpose and intent is shown by the writing itself and by the signature of the parties, and proof *aliunde* the will is not necessary to show concurrence of purpose or mutual intent. In such cases the courts generally, though not uniformly, hold that the understanding to make a joint reciprocal will may be conclusively inferred from the fact of its execution, together with the provisions of the will and the circumstances existing when the parties joined in executing it."

Many authorities from several jurisdictions are then cited. Thus, it was held in the *Seat* case, supra, if she hadn't accepted the benefits of their joint will that she could not be now heard to repudiate her contract evidenced by this will so as to dissent from the will and take

what the law allowed her after her dissent. This Court under a related state of facts in *Harris v. Morgan,* 157 Tenn. 140, 153, 7 S.W.2d 53, held that it would negative any conclusion but that the will was executed pursuant to an agreement. This case, that is the *Morgan* case, primarily presented the question of the statute of frauds, and the Court concluded there that when these brothers executed mutual wills witnessed by the same person that they took the matter out of the statute. Subsequently the *Morgan* case came on for trial and was appealed to the Court of Appeals (12 Tenn.App. 445) and certiorari was denied. This Tennessee Appeals case is one wherein the court took jurisdiction and allowed the bill for specific performance of certain things which were agreements made in the mutual wills of the Morgans.

■ In reading Page on Wills, sec. 11.6, Vol. I, it seems to us he hits the nail on the head when he says that in determining what is meant under these joint wills, that it is ''the paramount intent'' which must be given effect and ''the subsidiary intent'' should be put aside in favor of ''the paramount intent''.

■ The problem here is to determine under this joint will, above quoted, what was the intention of the parties. The rule, of course, has long been well settled when construing a deed or a will, the object is to discover the intention, which is to be gathered in every case from the general purposes and scope of the instrument before us and in the light of surrounding circumstances. *Burdick v. Gilpin,* 205 Tenn. 94, 325 S.W.2d 547, authorities there cited, and others which may be found by Shepardizing the matter. This Court as early as 1853 held that the sole object of the rules and principles laid down for the exposition of contracts, is to do justice to the parties by

enforcing a performance of their agreement according to the sense in which they mutually understood the contract at the time it was made.

The governing principle of construction, of course, is the intention of the parties and that intention may be ascertained by looking to the situation of the parties; the motives which induced the agreement; and the objects and purposes designed to be effected thereby. *McNairy v. Thompson*, 33 Tenn. 141. When we take the situation here, in this case, as averred in this bill and demurred to, we find that these two people had been married for over forty years and obviously they were getting near the end of their normal life. They had one child, a son, who was in business with his father, and it was their mutual concern that each of them should be cared for for life and that their son, and in the event of his death, his children, or their grandchildren, should likewise have the fruits and benefits of the property that the two of them had accumulated over a normal lifetime. Some of this property was in the name of one and some in the name of the other, some of it was held as tenants by the entireties, nevertheless it was their joint intention that all the property regardless of what it was would go at the death of the survivor of one or the other to their child or grandchildren.

It is perfectly obvious at the time they made this will neither thought anything about remarriage of the one who survived the other or anything like that coming into their life. Thus it was clearly not the intention that when they gave the survivor all of the property that he could dispose of it, but "the unexpended residue that said survivor owns * * * shall go to" this child or grandchildren. The clear intent of these parties, it seems to us

under the circumstances here in making this will, was that they were not intending to let the survivor give the property away to somebody outside of this family. There is thus a trust imposed upon the survivor of these two people to keep the property for this purpose, so to speak.

We are not unmindful of cases cited to the contrary and the stable and effective argument on the use of the term "unexpended revenue" but when one views the circumstances of these parties when they made this joint will, we cannot see how we can arrive at any other conclusion. The argument is well made by the appellees that if such had been intended it would have been a simple matter for the draftsman of this will to provide how this property should be managed, what the survivor could spend and what he couldn't spend, etc., but in the end we must, as said above in Page, get at the "paramount intent" of what was here intended.

This Court has heretofore placed itself along this line of reasoning when in *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.,* 184 Tenn. 629, 202 S.W.2d 178, and particularly at page 638 of our Report, we adopted, accepted and recognized as the proper view for us to follow the statement that such a situation leaves the property to the survivor of a joint will in trust, when this Court said:

"In *Baker v. Syfritt,* 147 Iowa 49, 125 N.W. 998, 999, there is an exhaustive review of the authorities touching the rights of revocation in the case of mutual wills, and also as to the interests of beneficiaries, heirs, or devisees. It was said (at page 61 of 147 Iowa, at page 1002 of 125 N.W.): 'Coming a step nearer to the case in hand we see no good reason why husband

and wife may not agree to unite their separate estates in the creation of a trust for the benefit of a third person, who shall come into the legal title and right of possession upon the death of the survivor. If to that end they execute a joint instrument, clearly expressing their purpose, then, whether it be called a contract, compact, will, or conveyance, we think it should be treated as a relinquishment of dower right, or, at worst, when the maker has died without attempting to revoke it, the other should be held estopped to set up any right which tends in whole or in part to the defeat of the common purpose. A contract is none the less a contract because it contains provisions which are testamentary in character, nor is a will any less a will, if properly executed, because it embodies contractual features. *Carmichael v. Carmichael,* 72 Mich. 76, 40 N.W. 173, 1 L.R.A. 596, 16 Am.St.Rep. 528; *Schneringer v. Schneringer,* 81 Neb. 661, 116 N.W. 491.' See also *Prince v. Prince,* 64 Wash. 552, 117 P. 255, 258.''

This Court then reached the conclusion that under the will there for construction a trust was created, and that since the parties had not filed action within the period of the statute of limitations for breach of trust that the action was barred by the statute. In other words we in this case accepted and adopted the theory that a joint will, as here, creates a trust. *Baker v. Syfritt,* above quoted from, is well reasoned and documented.

There is a case from Kansas, *Lewis v. Lewis,* 104 Kan. 269, 178 P. 421, which holds a mutual or reciprocal joint will made by a husband and wife cannot after the death of the wife and his acceptance of the benefits under the will be revoked by his subsequent remarriage. There are many other cases which we have read and re-read in our

investigation and in making up our mind on the questions here involved, and, after having done so, we are forced to the conclusion in the first place that this Court has adopted the theory with reference to estates left and accepted under a joint will of the kind and feel without hesitation that equity and good conscience require such a conclusion.

If we had merely the will of Mrs. Volz to consider and it was not a joint will and there was no contract involved in it, in interpreting it when she gave the property to Mr. Volz with the idea that the unexpended residue would go to somebody else that would be one way to look at it, but when it is connected with a contract under the facts between the two, we are required to view it from a different viewpoint.

The Rhode Island Court in *Daniels v. Aharonian*, 63 R.I. 282, 7 A.2d 767, has to our mind prepared an excellent opinion on a situation very closely related to that herein. That court says this:

"It satisfies all the requirements, stated in the authorities on the subject, for a contract which should be enforced in equity by imposing a trust upon the surviving party to dispose, in accordance with the agreement of the property covered thereby, provided, of course that the party first dying has performed the agreement on his part."

This Court then quotes from a Wyoming case of *Canada v. Ihmsen*, 33 Wyo. 439, page 452, 240 P. 927, 931, 43 A.L.R. 1010, to the effect that "it would be clearly unjust to permit the survivor to break his agreement * * *." And then the Rhode Island Court said this, which we think is particularly applicable to the factual situa-

tion as averred in this case, and which we adopt as the principle which should be followed in the disposition of this case:

"Moreover, if that part of the agreement which binds the surviving party contains no provision defining such party's powers over the whole property during the survivorship, but only provides that he shall by will dispose of his property at his death to certain beneficiaries a certain way, then it seems to be well settled that he holds all the property subject to a trust to carry out the agreement, but may use not only the income but reasonable portions of the principal for his support and for ordinary expenditures, and may change the form of it by reinvestment and the like, *but must not give away any considerable portions of it or do anything else with it that would be inconsistent with the spirit or the obvious intent and purpose of the agreement. Carmichael v. Carmichael,* 72 Mich. 76, 40 N.W. 173, 1 L.R.A. 596, 16 Am.St.Rep. 528; *Campbell v. Dunkelberger,* 172 Iowa 385, 153 N.W. 56; *Bower v. Daniel,* 198 Mo. 289, 95 S.W. 347." (Emphasis supplied.)

It will be noted that the authorities thus cited for this statement, which we have adopted from the Rhode Island Court, are the authorities which were the basis for the statement which this Court in *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.,* supra, adopted as the rule applicable in this State.

Very able argument is made by the appellees herein to the effect that this joint will passed complete title to Mr. Volz and hence the provisions for disposition upon his death are inoperative by reason of the common law rule

that a gift over, after a bequest or devise of full ownership, is ineffective. That rule though does not preclude contracts in mutual wills binding the survivor to a given disposition by the will.

The dividing line shown by the various decisions in these cases is indeed close. Some of these cases uphold the alienation as not prohibited by the contract, in this instance the joint will of the parties, while others attempt to see the matter in the light as made at the time the joint will or contract was entered into—in the light of the surrounding circumstances at that time—and then place thereon a trust on the part of the recipient and apply the rules of equity and good conscience to uphold this trust rather than on the strict bare interpretation of certain words used therein. We for reasons herein before expressed feel that in this State we are bound by the second proposition as having been accepted by decisions of the past as applicable hereto. Frankly, we think this line of reasoning is the sounder one, and must and do apply it.

For reasons herein expressed the judgment of the Chancellor is reversed and the cause remanded for further proceedings consistent with what is herein said.

CRESON, JUSTICE, not participating.