In re the ESTATE OF Christine Day ESPEY.

Elgie DAY, et al.,
Petitioners-Appellants,

v.

Linda Day SILLS, et al.,
Respondents-Appellees.

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 5, 1986.

Application for Permission to Appeal
Denied March 9, 1987.

Warmath and Boyte, Humboldt, for petitioners-appellants.

James D. Senter, III, Humboldt, for respondents-appellees.

CRAWFORD, Judge.

This is a will contest case. The appellants are the sisters, brothers, nieces, and nephews of the deceased, Christine Day Espey, and contest her 1983 will, which left the bulk of her estate to her niece, Linda Day Sills. Appellants contend that the 1983 will is invalid, because, among other things, it violates a 1970 contract between Christine Day Espey and her husband, Elton Espey, to make their mutual wills irrevocable. Thus, this will contest case turns on the construction of the mutual wills and contract previously executed by Mr. and Mrs. Espey.

On December 18, 1970, Elton Espey and Christine Day Espey executed separate but mutual wills. Each of these wills bequeathed all of their property to the other. Elton Espey's will stated in pertinent part:

## ITEM II.

I will, devise and bequeath unto my beloved wife, CHRISTINE DAY ESPEY, all of my property and estate of every kind or character, real, personal or mixed, to be hers absolutely and in fee.

## ITEM III.

In the event of the death of my said wife prior to my death, or in the event of our simultaneous death, or our death under circumstances where it cannot be determined which of us died first, I will, devise and bequeath one-half (½) of all of my property and estate of every kind and character unto my next of kin and heirs-at-law and one-half (½) unto the next of kin and heirs-at-law of my said wife; said next of kin and heirs-at-law of each of us to be determined as of the date of my death, and according to the laws and statutes of descent and distribution effective in the State of Tennessee as of the date of my death.

Christine Day Espey's 1970 will is the same as her husband's, leaving everything to him in Item II, and making the same alternative disposition in Item III upon his predeceasing her.

Also on December 18, 1970, the Espeys signed a contract entitled "CONTRACT BETWEEN HUSBAND AND WIFE TO MAKE WILLS IRREVOCABLE." The contract provides in part:

WHEREAS, all or substantially all of the property and estate of the undersigned ELTON ESPEY and CHRISTINE DAY ESPEY, husband and wife, is owned jointly by us as tenants by the entirety, and was acquired by our joint work and efforts; and,

WHEREAS, it is the desire and intention of both of us to insure that, upon the death of the survivor of us, any and all of the remaining estate of the survivor shall go to and vest in our respective next of kin, one-half (½) to the next of kin of the undersigned Elton Espey and one-half (½) to the next of kin of the undersigned Christine Day Espey; and,

WHEREAS, we have this day executed separate but mutual Wills, wherein we have provided that all of the property and estate of each of us shall go to the surviving husband or wife, in fee and without limitation or restriction of any kind, and that any balance remaining in the estate of each of us upon the death of the survivor of us shall go one-half (½) to the next of kin of each of us.

NOW, THEREFORE, we contract, covenant and agree as follows:

That our respective Wills referred to above and this day executed by us shall be and remain irrevocable; and that neither of us will make or attempt to execute another Will that is not in strict accordance with all of the provisions of the Will this day executed by us.

It is further understood and agreed, however, that nothing in our aforesaid respective Wills and nothing in this instrument shall in any way limit or restrict the use, disposition, expenditure or enjoyment of our property during our lifetime or during the lifetime of the survivor of us. It is further agreed, however, that neither of us will make any substantial gifts or transfers of our estate during our lifetime to those who would or may be or become our respective next of kin in violation of the intendment of this

contract. This does not include or prohibit usual and customary gifts which are not of such value as to imply an attempt to violate this agreement.

It is further understood and agreed that either of us may, if we so desire, make gifts or transfers of any part of our property by trust or otherwise equally to the next of kin of either of us.

Elton Espey's will was probated in 1977 shortly after his death. On May 19, 1983, Christine Day Espey, executed the will which is the subject of this will contest suit. In the new will, she left one-half of the estate to the next of kin and heirs at law of Elton Espey to be determined as of the date of her death according to the laws of the State of Tennessee. After making several small specific bequests, Mrs. Espey devised the bulk of the other one-half of her estate to her niece, Linda Day Sills. Upon Mrs. Espey's death on November 2, 1984, her May, 1983, will was probated as her last will and testament and precipitated the petition to contest the will which we have before us.

At the conclusion of the evidence, the trial court submitted the following special issue to the jury:

Is the 1983 will executed by Christine Day Espey, trial exhibit number three, invalid because:

a) it violates the 1970 contractual agreement between Elton Espey and Christine Day Espey, trial exhibit number one, because you the jury find that the 1970 contract required Christine Day Espey to divide one half of her estate equally between her heirs at law and next of kin?

The jury answered the special interrogatory "no" and the court entered judgment thereon sustaining the validity of the 1983 will. The appellants have presented three issues for review which we quote from appellants' brief.

(1) Whether the instrument dated May 19, 1983, purporting to be the Last Will and Testament of Christine Day Espey breached a contract between her and her husband, Elton Espey, dated December 19, 1970, executed simultaneously with the execution of reciprocal but separate Wills and if, upon the death of the said Elton Espey, his Will became her Will and could not be changed.

(2) Whether the said Wills of Mr. and Mrs. Espey or the contract between them contain any ambiguity and require any parole testimony for an adjudication of the intent of the parties to those instruments.

(3) Whether the trial Judge should have:

(A) Granted Will contestants' (Appellants) Motion For Summary Judgment.

(B) Granted contestants' Motion made at the conclusion of the Will proponents' evidence to withdraw the issues from the jury and grant judgment in favor of contestants.

(C) Granted contestants' Motion to Withdraw the Issues from the jury and enter judgment in favor of contestants made at the close of all the evidence.

(D) Granted contestants' Motion For Judgment Notwithstanding the Verdict or For a New Trial.

(E) Read to the jury certain special instructions requested by contestants.

(F) Sustained contestants' Motion *In Limine* made prior to the beginning of oral testimony at the trial.

We will consider appellants' first and second issues together.

■ The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and give effect to the intention consistent with legal principles. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578 (Tenn.1975). In ascertaining the intention of the parties and what was within their contemplation, the Court should consider all of the surrounding circumstances. *See Fidelity-Phenix Fire Ins. Co. of New York v. Jackson*, 181 Tenn. 453, 181 S.W.2d 625 (1944); *Barretsville Bank & Trust Co. v. Bolton*, 182 Tenn. 364, 187 S.W.2d 306 (1945). If a contract is plain and unambiguous the meaning thereof is a question of law and it is the Court's function to interpret the contract as written according to its plain terms. *Petty v. Sloan*, 197 Tenn. 630, 277 S.W.2d 355 (1955). Where the writing is

not plain and unambiguous and is such as to require the aid of parole evidence and the parole evidence is conflicting or such as admits of more than one conclusion, it is not error to submit the doubtful parts under proper instructions to the jury. *Forde v. Fisk University,* 661 S.W.2d 883 (Tenn. App.1983).

As noted, the jury found that Mrs. Espey's 1983 will was valid because it did not violate the 1970 contractual agreement. The effect of such a finding is that the intention of the parties was that one-half of the estate of the survivor was to go to the family of the first deceased to be divided according to the laws of descent and distribution, and the other one-half of the survivor's estate could be disposed of as the survivor saw fit. Mrs. Espey's 1983 will complied with the terms of the contract with her deceased husband by bequeathing one-half of her estate to his heirs at law. The contract, although stating that the will shall remain irrevocable, anticipated that a subsequent will might be executed when it said that "neither of us will make an attempt to execute another Will that is not in strict accordance with all of the provisions of the Will." This is an indication that the parties intended for the first decedent's family to have one-half of the survivor's estate and that the survivor would not relinquish the right of disposition to the other one-half of the estate. We find it difficult from the record before us to find that Mr. and Mrs. Espey intended to abdicate their right to make a testamentary disposition of their one-half of the estate after the death of their spouse. In *Ashley v. Volz,* 218 Tenn. 420, 404 S.W.2d 239 (1966), the court in discussing the construction of contracts said:

> The governing principle of construction, of course, is the intention of the parties and that intention may be ascertained by looking to the situation of the parties; the motives which induced the agreement; and the objects and purposes designed to be effected thereby. (Citations omitted)

*Id.* at 427, 218 S.W.2d at 242.

■ Parol evidence was properly admitted to prove the circumstances surrounding the making of the mutual wills and contract. Furthermore, the language of the contract when considered in the light of those circumstances marks the contract with the ambiguity and the uncertainty which caused the trial court to find the contract ambiguous.

■ There is evidence that Mrs. Espey's primary beneficiary in the 1983 will was the one who helped her during her latter years and there was evidence that she had become disenchanted during these years with some of her other relatives because of their lack of attention. We think the terms of the agreement establish the intent that one-half of the survivor's estate could be disposed of by the survivor in such a manner as befits the circumstances. From our examination of the record we find material evidence to support the jury's finding.

Appellants also assert that this case is controlled by *Estate of Zach T. Bright,* 482 S.W.2d 555 (Tenn.1972). We disagree with appellants' interpretation of *Bright.* In *Bright* there were mutual and reciprocal wills with the husband and wife each leaving their entire estate to the other with no provision for any third persons. The Brights had previously been married and each had children by a former marriage. Mrs. Bright died in October, 1970, leaving three children and Mr. Bright died in November, 1970, leaving two children. The mutual wills had not been changed prior to Mrs. Bright's death and Mr. Bright did not change his will after Mrs. Bright's death. Mrs. Bright's children claimed by virtue of the lapsed legacy statute that they should take her bequest under Mr. Bright's will. However, the Supreme Court held that Mr. Bright's will should not be admitted to probate because it was the intent of the testators in the mutual wills to have only one will take effect, that being the will of the first to die. The court said:

> In American Jurisprudence, Wills, Section 737, the following statement appears which we adopt as the applicable law in Tennessee:
>
> "Statutes have been enacted in many jurisdictions designed to prevent, under certain circumstances, the application of the rule that a bequest lapses upon the death

of the donee occurring prior to the death of the testator by providing that in such contingency, the heirs or issue of the deceased donee shall take in the absence of testator's intention to the contrary. An important question presented in several cases concerns the application of such a statute in a case involving wills which are reciprocal in their bequests. The question ordinarily arises where the wills are those of husband and wife and one of the spouses has died leaving his entire estate to the other. The question is whether upon the death of the latter, the heirs of the former will take the entire estate under the statute as the heirs of a donee whose death has preceded that of the testator. According to some authorities, mutual wills, that is to say wills executed pursuant to an agreement or compact between the testators by which each testator bequeathed his property to the other, making no provision for a third person either absolute or conditioned upon the death of both testators in a common disaster, constitute in effect a single will, being the will of the first to die, and has no existence as the will of the surviving testator."

482 S.W.2d at 557. Obviously, Bright has no application to the factual situation involved in the case at bar.

Appellants first two issues are without merit.

■ Appellants have presented no argument on the third issue presented, therefore we will not consider the issue except as it might have been touched upon in our consideration of the other two issues. *See* Rule 6, Rules of the Court of Appeals, T.R.A.P. 27.

The judgment of the trial court is affirmed and the case is remanded for such further proceedings as are necessary. Costs of the appeal are assessed against the appellants.

TOMLIN and HIGHERS, JJ., concur.