IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 9, 2013 Session

IN RE ESTATE OF MITTIE T. ALEXANDER

Appeal from the Probate Court for Davidson County
No. 09P1052    David Randall Kennedy, Judge

No. M2012-01901-COA-R3-CV - Filed June 5, 2013

Conservator filed suit to rescind a pre-conservatorship conveyance of real property by ward to her niece. The jury found in favor of niece and the trial court entered judgment on the jury verdict. Conservator appeals, arguing that the trial court erred in limiting the testimony of her expert witness. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and FRANK G. CLEMENT, JR., J., joined.

G. Kline Preston, IV, Nashville, Tennessee, for the appellant, Teresa Alexander.

Dan R. Alexander and Susan Bratton Evans, Nashville, Tennessee, for the appellee, Starlene Anderson.

OPINION

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises from an action to rescind the conveyance of an interest in real property.[1] In July 2009, plaintiff Teresa Alexander ("Ms. Alexander") filed a petition for

---

[1] Our factual summary is partially a duplication of the undisputed background facts set forth in our opinion issued from the previous appeal in this case. *See Alexander v. JB Partners*, 380 S.W.3d 772 (Tenn. Ct. App. 2011).

conservatorship of her Mother, Mittie T. Alexander ("Miss Mittie").[2]  In her petition, Ms. Alexander alleged that Miss Mittie suffered from dementia and that she had made financial decisions over the preceding two years that were ill-advised and had affected her financial well-being.  Ms. Alexander alleged that those decisions resulted from mental incapacity.  She specifically asserted that Miss Mittie transferred her interest in real property in Nashville without consideration, and that the transaction was unfair and "could not have been intentional."  The court appointed Ms. Alexander as Miss Mittie's conservator on September 11, 2009.

On September 18, 2009, Ms. Alexander filed the present action on Miss Mittie's behalf against Starlene Anderson ("Ms. Anderson"), who is Ms. Alexander's cousin and Miss Mittie's niece.  In her complaint alleging fraud, fraud in the inducement, and seeking rescission, Ms. Alexander asserted that Miss Mittie, while legally blind and mentally incompetent, transferred her property interest to Ms. Anderson without consideration on April 22, 2008.  She alternatively asserted that Miss Mittie did not understand the transaction and that she entered into it by mistake.  In her amended complaint adding a claim for breach of contract and an equitable action for rescission, Ms. Alexander alleged that Ms. Anderson attempted to "steal" the property from Miss Mittie, and that she told Miss Mittie that she "would pay her for the property."  Attached to the complaint was a warranty deed by which Miss Mittie conveyed the property to Ms. Anderson for $10.00 consideration, but retained a life-estate.[3]

In her answers, Ms. Anderson denied Ms. Alexander's claims and averred that Miss Mittie met privately with her attorney prior to the conveyance, that Miss Mittie's attorney drafted the deed out of Ms. Anderson's presence, that Miss Mittie was competent when she conveyed the property, that Miss Mittie "desired to have [Ms. Anderson] reoccupy the abandoned property," and that Ms. Anderson made over $15,000 of improvements to the property.

On January 11, 2012, Ms. Alexander filed a motion for partial summary judgment on the breach of contract claim.  By order entered February 27, 2012, the trial court denied the motion, finding "that there are genuine issues of material fact in dispute."

The case proceeded to a jury trial held on May 7 and May 8, 2012.  During trial, the

---

[2] Consistent with our prior opinion, we will refer to Mittie T. Alexander as Miss Mittie.  We mean no disrespect.

[3] The second page of the April 22, 2008 warranty deed includes Ms. Anderson's signed, notarized affidavit in which she crossed out $10.00 and substituted $50.00 as the amount of the consideration.

court limited the testimony of Ms. Alexander's expert, Dr. David Turner, and did not qualify him as an expert in dementia. The jury entered a verdict in Ms. Anderson's favor finding, as relevant to this appeal, that Miss Mittie did not lack the capacity to transfer the property to Ms. Anderson at the time she signed the warranty deed on April 22, 2008, that there was a contract between Ms. Anderson and Miss Mittie, and that Ms. Anderson did not breach the contract. On May 21, 2012, the trial court entered judgment on the jury verdict.

After Miss Mittie's death in June 2012, the estate was substituted in her place as a party in the case.

By order entered July 27, 2012, the trial court denied Ms. Alexander's motion for new trial and, pursuant to Tenn. R. Civ. P. 54.04, granted Ms. Anderson's motion for discretionary costs, awarding her a $2,839 judgment against the conservatorship.

Ms. Alexander filed her notice of appeal on behalf of the estate on August 24, 2012. Ms. Anderson then moved the court to set a bond for special damages pending appeal, asserting that "[she] is damaged by the appeal in that the judgment involves title to real property and a pending valid executory contract[4] for sale of the real property." By amended order entered September 28, 2012, the trial court granted the motion, finding "that the appeal has placed a cloud on the title and that Starlene Anderson is unable to sell the real property and is suffering damages for the delay." The court further found that a $7,713.29 cash bond, which includes $5,000 for loss of use of the property's sale proceeds and $2,713.29 for 2012 property taxes, would be "sufficient to cover any expected damages due to the delay in closing on the contract."

ISSUES

Ms. Alexander raises the following issues for our review: (1) Whether the trial court abused its discretion in failing to accept Dr. David Turner as an expert on dementia; (2) Whether the trial court erred in denying the motion for partial summary judgment; (3) Whether the trial court erred in awarding discretionary costs to Ms. Anderson; and (4) Whether the trial court erred in setting a bond for special damages. In the posture of appellee, Ms. Anderson asks us to consider whether this appeal is frivolous.

ANALYSIS

_____

[4] As discussed in this Court's previous opinion, before this lawsuit and before Ms. Alexander was Miss Mittie's conservator, Ms. Anderson entered into a contract with Mr. Bryan Church for the sale of her interest in the property. Mr. Church paid earnest money. Mr. Church then assigned his interest to JB Partners. *See Alexander v. JB Partners*, 380 S.W.3d at 777, 779.

## I. Expert Testimony

We first address Ms. Alexander's argument that the trial court erred in limiting her expert witness's testimony and in not qualifying him as an expert on dementia.

Trial courts have broad discretion on decisions regarding the admissibility or competency of expert testimony. *State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2009). A trial court's decisions regarding the admission or exclusion of evidence are reviewed under an abuse of discretion standard. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 273 (Tenn. 2005); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004). Under this standard, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). So, "we are not permitted to substitute our judgment for that of the trial court." *Id.* As to the admissibility of expert testimony, "[a]n expert witness may testify if his or her 'scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Scott*, 275 S.W.3d at 404 (quoting Tenn. R. Evid. 702).

The critical issue at trial was Miss Mittie's competency on April 22, 2008, the date she executed the deed to Ms. Anderson. Specifically, Ms. Alexander sought to prove that Miss Mittie was suffering from vascular dementia at the time she conveyed the property to Ms. Anderson.[5] In support of this theory, Ms. Alexander called Dr. David Turner, a family practice physician who first saw Miss Mittie on September 27, 2011, more than three years after the conveyance.

Dr. Turner testified that he is a medical doctor who has been licensed in Tennessee for seventeen years and that, over the preceding five years, he treated and diagnosed about twenty patients suffering from Alzheimer's Disease or from dementia. He noted that he regularly attended conferences to further his education. During voir dire, when questioned by Ms. Anderson's attorney as to the extent of his expertise in dementia, Dr. Turner explained:

> Q. Okay and do you hold yourself out as having any expertise in the area of

---

[5] It is undisputed that Miss Mittie was not actually diagnosed with vascular dementia until March 18, 2009. Dr. Eric Thomassee, one of Miss Mittie's treating physicians at the time, testified in his deposition that, during Miss Mittie's March 18, 2009 appointment, Ms. Alexander expressed concerns to him about Miss Mittie's memory and mental capacity, informed him of a "recent" conveyance to Ms. Anderson and the resulting lawsuit, and requested memory testing for Miss Mittie. Based upon her Mini Mental Exam score and her medical history, Dr. Thomassee diagnosed Miss Mittie with vascular dementia. Dr. Thomassee's deposition testimony was entered as an exhibit at trial.

mental competence, dementia, or Alzheimer's?

A. I hold myself out as an expert in Family Medicine and Family Practice -

Q. And General Practice -

A. - of which the assessment of competence, mental disease, depression, anxiety, from lacerations to broken bones are within the realm of expertise.

Q. And in the area of seeing someone who had dementia or Alzheimer's would be in the context of them coming into your Family Practice and you discovering they had that; is that correct?

A. That's correct.

Q. Normally, a patient wouldn't go to you specifically, as an expert on the area of Alzheimer's or mental competence?

A. No, because the Family Practice, as a generalist, we tend to pick up these things earlier and we generally make the diagnosis and initiate the treatment and follow those patients.

Q. Now, if a patient in the Middle Tennessee area needed some expert care in the area of Alzheimer's or dementia, where would they go? Are there facilities here where there is expertise?

A. Generally, Neurologic Specialties will often provide some further help with dementia patients.

. . .

Q. And you haven't listed, since you've been practicing all those years, you haven't listed anything in [your CV] to show that you have any particular training or specialty training in the area of dementia, mental competency or Alzheimer's, have you, Doctor?

A. No, but that's part of what we do on a daily basis.

The trial court followed by asking Dr. Turner about the distinction between dementia and Alzheimer's Disease and about what diagnostic procedures he uses to determine whether an individual suffers from dementia. Following voir dire, the trial court ruled that it would not qualify Dr. Turner as an expert on dementia, but offered Ms. Alexander an opportunity to develop the testimony regarding Miss Mittie's capacity and competency:

The Court: Well, what I'm going to allow you to do, Mr. Preston [Ms. Alexander's attorney], is this. As I said earlier, I think Dr. Turner has been qualified as a licensed medical doctor in the State of Tennessee. He's also a treating physician for Miss Mittie Alexander. He has testified that he has treated approximately 20 patients over the course of the last five years. Prior to that he was an emergency room physician for some 20 years. The Court has received no information that would suggest to the Court that he is an expert in neurology or in the diagnosis of Alzheimer's or dementia, notwithstanding the

-5-

fact that the Court has concluded that he does have the requisite expertise to give an opinion regarding her capacity and her competency from and after the date of his initial treatment. *Now, if questions are asked of him about her capacity or competency previous to September 27, 2011, which is his date of first treatment, if the events are not so remote as to make them speculation then the Court will entertain those questions*. But I also have to listen and see whether there are any objections to that. And if you follow me there, Mr. Preston -

Mr. Preston: I do, Your Honor.

The Court: - we'll let you develop your testimony and we'll see how far back - if a proper foundation is presented for [Dr. Turner] to go back prior to September 27, 2011 we'll deal with that as you do. All right?

Mr. Preston: Okay.

The Court: And just to say for your benefit, Mr. Alexander [Ms. Anderson's attorney], your objection for all matters prior to September 27, 2011 is held in abeyance, the ruling on that is, until he asks the question since I think that is premature.

(Emphasis added).

On direct examination, Dr. Turner presented to the trial court and the jury a detailed explanation of the definition, symptoms, causes, and consequences (such as "loss of short term memory" and "increasing confusion") of vascular dementia, while emphasizing that "[i]t's a gradual, progressive disease." As to diagnosing Miss Mittie with vascular dementia upon examining her on September 27, 2011, Dr. Turner testified:

Q. What did you use to make your determination or your evaluation as to [Miss Mittie's] condition?

A. The first was I reviewed information from her daughter, [Ms. Alexander]. Families help us every day in discussing what's going on with these patients. I then also based it on my examinations. I based it on - there was also - I read a deposition of Dr. Thomassee and there's some information from him about the diagnosis of vascular dementia. And I also reviewed [Miss Mittie's] deposition that was taken in 2010.

. . .

Q. And [Dr. Thomassee] determined that she had vascular dementia?

A. Yes.

Q. And are you referring to a report[6] that was used by this Court to establish the conservatorship over [Miss Mittie]?
A. I believe that's the same document.
Q. Do you disagree with his findings?
A. No, I do not.

Despite the trial court's giving her the green light to do so, during direct and re-direct examination, Ms. Alexander did not question Dr. Turner on his opinion about Miss Mittie's capacity or competency on the day she executed the deed to Ms. Anderson. As the trial court noted outside the jury's presence, Ms. Alexander "didn't ask [Dr. Turner] a single question about anything prior to the date that he saw [Miss Mittie]" or otherwise develop the proof on what she refers to on appeal as "the most salient issue in her case." Nevertheless, the trial court allowed Ms. Alexander to make an offer of proof. By failing to introduce her expert's testimony to the extent the trial court permitted, Ms. Alexander "failed to take whatever action was reasonably available to prevent or nullify the harmful effect" of the error she alleges on appeal. Tenn. R. App. P. 36(a). The trial court's decision not to qualify Dr. Turner as an expert on dementia does not amount to an abuse of discretion.

## II. Partial Summary Judgment

Ms. Alexander argues that the trial court erred in denying her motion for partial summary judgment on her breach of contract claim because the undisputed facts show that Miss Mittie and Ms. Anderson "entered into a contract, notwithstanding the fact that [Miss Mittie's] competency at the time is at issue, which required [Ms.] Anderson to pay a certain amount of consideration for the property" and that Ms. Anderson did not pay the consideration. Ms. Anderson argues that there "were disputed facts as to what the agreement, if any, was between [them]." We agree with Ms. Anderson.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

_____

[6] Dr. Thomassee's report, made March 18, 2009, indicated that Miss Mittie had "cognitive impairment resulting from vascular dementia" and a "poor" mental condition. It seems that this report was entered as an exhibit at trial along with Dr. Thomassee's deposition testimony.

The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Byrd*, 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists. *Id.* To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must either: "(1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan*, 270 S.W.3d at 8-9.[7] It is not enough for the moving party to "merely point to omissions in the nonmoving party's proof and allege that the nonmoving party cannot prove the element at trial." *Id*. at 10. "Similarily, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." *Martin*, 271 S.W.3d at 84. If the moving party fails to satisfy its initial burden of production, the court should dismiss the motion for summary judgment. *Hannan*, 270 S.W.3d at 5.

We consider the evidence presented in support of and in opposition to a motion for summary judgment in the light most favorable to the nonmoving party, resolve all inferences in that party's favor, and discard all countervailing evidence. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Byrd*, 847 S.W.2d at 210-11. The "grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 26 (Tenn. 2011) (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)).

The record before us does not contain a transcript of the hearing on the motion for partial summary judgment, however, the conflicting affidavits and deposition testimony indicate disputed, material facts that created genuine issues for trial. For example, in an affidavit made April 8, 2010 regarding the April 22, 2008 deed, Ms. Anderson swore that Miss Mittie "never asked for any payment, but [she] would have and will pay the consideration she has indicated she now thinks she is entitled to." In her March 10, 2010 deposition, Miss Mittie testified that Ms. Anderson told her she was going to pay her $400 or $500 for the property, but later in the same deposition testified, "I was thinking I was going to get $8000 or $9000, besides letting them move in on the house." Miss Mittie further testified that she had an understanding about payment for the property with her sister, Tiny, not with Ms. Anderson. In another affidavit made February 6, 2012, Ms. Anderson swore

---

[7] Tennessee Code Annotated § 20-16-101 (2011), a provision that is intended to replace the summary judgment standard adopted in *Hannan*, is inapplicable to this case. *See Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 25 n.2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011).

that she "never had an agreement, understanding or contract with [Miss Mittie] to pay her anything for the real property," that Miss Mittie "made all the arrangements, made the appointment with her attorney, Susan Melton, and sought out her own Notary Public to notarize her signature." Ms. Anderson further asserted that the property was a "gift" to her from Miss Mittie so that they could live near each other, and that she made improvements to and paid taxes on the real property that were worth much more than the consideration cited in the April 22, 2008 deed.

In this case, resolving the disputes about Ms. Alexander's breach of contract claim was a task for the jury. We affirm the trial court's denial of Ms. Alexander's motion for partial summary judgment.

### III. Discretionary Costs

Upon Ms. Anderson's motion, the trial court awarded her $2,839 in discretionary costs. Ms. Alexander summarily requests that we reverse this award.

Tennessee Rule of Civil Procedure 54.04 allows a trial court to award discretionary costs to a prevailing party. Tenn. R. Civ. P. 54.04; *Fannon v. City of LaFollette*, 329 S.W.3d 418, 433-34 (Tenn. 2010). These costs may include reasonable and necessary court reporter expenses and expert witness fees for depositions or trials. Tenn. R. Civ. P. 54.04(2). Ms. Anderson's motion included an itemized list of costs that are recoverable under the rule and a certification that the costs were reasonable and necessary to prepare and try the case and that the services charged for were actually performed.

Appellate courts generally will not alter a trial court's ruling with respect to costs absent a clear abuse of discretion. *Placencia v. Placencia*, 3 S.W.3d 497, 503 (Tenn. Ct. App. 1999). Ms. Alexander does not argue, and our review does not reveal, that the trial court abused its discretion in awarding costs to Ms. Anderson, the prevailing party. Therefore, we affirm the trial court's ruling with respect to this matter.

### IV. Bond for Special Damages Pending Appeal

After the jury found in her favor, Ms. Anderson was vested with a remainder interest in the property which then became a fee simple interest upon Miss Mittie's death. Anticipating appeal, Ms. Anderson moved the trial court to set a bond that would protect her from damages that she would incur because of her inability to convey marketable title to the property pursuant to her pending executory contract with JB partners. Ms. Anderson supported her motion with her own affidavit and that of an attorney and agent from the title company that was to handle closing. The trial court set a $7,713.29 bond and found "that the

appeal has placed a cloud on the title and that Starlene Anderson is unable to sell the real property and is suffering damages for the delay."

On appeal, Ms. Alexander did not brief or offer any argument on this issue, so we consider it waived. *See* Tenn. R. App. P. 27; *Brinton v. Brinton*, No. M2009-02215-COA-R3-CV, 2010 WL 2025473, at *5 (Tenn. Ct. App. May 19, 2010); *In re Estate of Espey*, 729 S.W.2d 99, 103 (Tenn. Ct. App. 1986); *Painter v. Toyo Kogyo of Japan*, 682 S.W.2d 944, 951 (Tenn. Ct. App. 1984).

## V. Frivolous Appeal

Lastly, we consider Ms. Anderson's request for damages for a frivolous appeal. "When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may . . . award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal." Tenn. Code Ann. § 27-1-122. An appeal is considered frivolous when it appears the appellant had no reasonable chance of success. *Liberty Mut. Ins. Co. v. Taylor*, 590 S.W.2d 920, 922 (Tenn. 1979). Applying our discretion, we decline Ms. Anderson's request.

## CONCLUSION

For the foregoing reasons, we affirm the trial court in all respects. Costs of appeal are assessed against the appellant, Teresa Alexander, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE